# THE STATE v. SHOUSE, Appellant.

### Division Two, May 16, 1905.

1. **REPUTATION OF DEFENDANT: Improper Evidence.** Testimony as to the reputation of defendant, which was not based on the witness's knowledge of defendant's reputation in the community in which he resided, but was limited to his reputation in another State, seven or eight years prior to the commission of the alleged offense, was improper, and should have been excluded.

2. **RAPE: Evidence: Subsequent Relation of Prosecutrix with Defendant.** Where, in the prosecution of a stepfather for rape upon his stepdaughter, the prosecutrix has testified that she left defendant's home immediately after the commission of the crime and thereafter never had any communication with him, evidence offered by him to show that prosecutrix was playing "April fool" with him three days after the commission of the alleged offense, should have been admitted. Defendant was entitled to the benefit of this evidence as a circumstance throwing light on the testimony of the prosecutrix, and as going to discredit her evidence.

3. ———: **Divorce Petition: Improper Evidence.** In the prosecution of a stepfather for rape upon his stepdaughter, a petiton for divorce, filed by the mother of the prosecutrix against the stepfather, based upon personal indignities, but not upon the charge of rape, was irrelevant and was properly excluded.

4. ———: **Wife of Defendant as Witness: Improper Remarks of Attorney.** A reference by the prosecuting attorney, in his argument to the jury, to the failure of defendant's wife to testify, and a statement by him that under the law he was unable to compel her to testify, is improper, and a violation of the statute prohibiting any reference to the failure of a defendant to avail himself of the testimony of his wife.

Appeal from Pemiscot Circuit Court.—*Hon. H. C. Riley*, Judge.

REVERSED AND REMANDED.

*Gossom & McKay* for appellant.

(1) The testimony of witness Burris, as to the reputation of defendant in Tennessee, some seven or eight years prior to alleged offense, was incompetent and erroneous. State v. Parker, 96 Mo. 382; Waddingham v. Hulett, 92 Mo. 528. (2) The court clearly erred in rejecting the testimony of witness Ida Adams, offered to show that the prosecutrix was playing "April fool" with appellant on the first day of April, being the third day after the alleged offense, for the reason that the prosecutrix had testified that she left the home of her stepfather, the appellant herein, on the following morning, or the 30th day of March, as such testimony tended to contradict the prosecutrix when she testified that she left home and never returned for from one to two weeks and never spoke to the appellant after the night of the 29th of March. State v. Patrick, 107 Mo. 147. (3) The divorce petition of Mary Shouse, the mother of the prosecutrix, filed against the appellant, was competent for the purpose of contradicting the prosecutrix, who testified that she had fully informed her mother of the perpetration of the outrage upon her by appellant. (4) The prosecuting attorney committed reversible error in his closing argument to the jury; and entirely disregarded the statute in the use of the following language: "I just show that we cannot put her on the stand" and "that we could not put his wife on to testify." Clearly referring to the failure of defendant's wife to testify and calling the jury's attention to the fact, in open violation to the statute and plain decisions of our courts, and is reversible error. In denying any reference to appellant's wife failing to testify, he does the very thing the statute forbids him from doing, that is, to refer or allude to the matter. R. S. 1899, sec. 2648; State v. Weaver, 165 Mo. 1.

*Herbert S. Hadley,* Attorney-General, and *John Kennish,* Assistant Attorney-General, for the State.

(1) Although an objection by the prosecuting attorney was sustained to the evidence that the prosecutrix was playing "April fool" with the defendant on the first day of April, yet the defendant was permitted to prove fully by the same witness that the prosecutrix was at home on the said first day of April, that witness heard the prosecutrix talk to the defendant that day about "April fool," and that the prosecutrix was home most of the first week of April, after the date of the alleged offense. This was all the defendant sought to prove when the objection was sustained. The defendant therefore was not prejudiced by this ruling of the court. (2) It was not error to exclude the divorce petition of the mother of the prosecutrix as evidence against the State. The plaintiff in said petition was not a party to the cause, nor a witness, and there is no rule of evidence by which her statements or admissions could be admissible as evidence in a case in which she had no legal status whatever. (3) The record fails to show that the prosecuting attorney used the language set out, or even substantially the same language. And the mere setting out of the language in the motion for a new trial is not proof that such remark was in fact made. Besides, the record shows that when objection was made to the remarks of the prosecuting attorney, the court promptly reprimanded him and directed him to keep within the record, and the prosecutor then desisted. State v. Dagoma, 69 Mo. 485; State v. Schorn, 12 Mo. App. 590.

GANTT, J.—This is an appeal from a judgment of the circuit court of Pemiscot county. On the 25th of April, 1904, the prosecuting attorney of Pemiscot county filed in the office of the circuit clerk of said coun-

ty, in vacation, an information, duly verified, charging the defendant with an assault with intent to rape Katie Mott, at said county on the — day of March, 1904, and thereupon a warrant issued and the defendant was arrested and placed under a bond in the sum of one hundred dollars for his appearance at the June term, 1904, of said court.

Thereafter, at the June term, 1904, of said court, the prosecuting attorney filed an amended information charging. defendant with rape of the same female on the day aforesaid. Defendant was arraigned on this new charge and put upon his trial and was convicted and sentenced to the penitentiary for five years. He appeals from that judgment.

The evidence tends to show that the defendant was, at the time of the commission of the alleged offense, the stepfather of the prosecutrix; that he had married her mother in the year 1897, when the prosecutrix was a child not over six years old; that she had been reared in his family up to the time she preferred this charge against him. Defendant is a man sixty years old. The defendant and his wife were having trouble and the wife filed a divorce suit at the same time this complaint was lodged against defendant, based upon personal indignities, but not upon this ground. The conviction was obtained upon the unsupported and uncorroborated evidence of the prosecutrix. She testified, in substance, that on the evening of March 29, 1904, at Hayti, in Pemiscot county, the village in which defendant, his wife, and prosecutrix were residing at the time, the defendant, her mother and she had eaten their supper and her mother had finished her supper first and had stepped out of the house without saying where she was going, but was gone about five minutes; that after her mother left the dining room the defendant and prosecutrix were sitting on opposite sides of the table and finished their supper in a minute or two. When defendant got through his supper, he arose from

the table and put on his overcoat and walked around
the table to prosecutrix and proposed to her, "Let's
do it," and she told him to go away, whereupon he put
his left hand over her mouth and laid her on the floor,
and, notwithstanding all her efforts, succeeded in hav-
ing connection with her, but hearing her mother return-
ing he jumped up, grabbed his hat and ran out of the
house just as her mother came in the door.

She testified she told her mother about the occur-
rence that night and that the next morning defendant
came into her room where she was sleeping with a Mrs.
Adams and gave prosecutrix a whipping with a board
because she had told her mother. Defendant and her
mother occupied the same room that night. No charge
was made against the defendant by the mother or
daughter to Mrs. Adams or any other neighbor, and no
physician was called to make an investigation.

Mrs. Adams fixed the time when she slept with
prosecutrix as in April, but the prosecutrix was posi-
tive it was in March. Prosecutrix testified she went to
Mrs. Champion's and stayed after this occurrence and
continued at school and never spoke to defendant af-
terwards. The defendant positively denied commit-
ting the offense.

There was evidence tending to prove defendant's
reputation for morality was bad. Among other wit-
nesses called to establish his bad reputation was Cheat
Burris, who testified he had lived in Pemiscot county
about eighteen months and in Caruthersville about two
weeks before the trial; that prior to his removal to this
State he had resided in Lake county, Tennessee, and
had been constable, sheriff and justice of the peace in
that State; that he had known defendant in Tennessee
seven or eight years. Asked if he knew defendant's
reputation in Tennessee for morality, the defendant
objected for the reason that the inquiry was not limited
to the reputation of defendant in the community in

which he resides. The objection was overruled and defendant excepted.

There was evidence tending to show defendant's reputation for morality was good in the neighborhood in which he resided.

Objections were made and exceptions saved to remarks of the prosecuting attorney in his closing address.

I. We think the circuit court erred in permitting the witness Burris to testify to the reputation of defendant in Tennessee some seven or eight years prior to the time this charge was preferred against defendant. The testimony had already revealed that the defendant and his family had been living at Hayti since December, 1897, and the witness did not pretend to know nor was he asked whether he knew defendant's reputation in the community in which defendant resided, nor did the witness attempt to speak of defendant's reputation in this State at all. The rule announced by Greenleaf (1 Green. Ev., sec. 459), that "all inquiries into transactions of a remote date will, of course, be suppressed; for the interests of justice do not require that the errors of any man's life, long since repented of and forgiven by the community, should be recalled to remembrance and their memory perpetuated in judicial documents at the pleasure of any future litigant," was approved in State v. Parker, 96 Mo. l. c. 390. [Waddingham v. Hulett, 92 Mo. 533.]

Nothing said in State v. Miller, 156 Mo. 84, 85, militates against the view we have just expressed. In that case the witness testified he had lived in the same neighborhood, Troy, Kansas, with the defendant for many years and though witness had moved into Missouri nine years previous to the trial, he continued to visit in Troy from time to time and knew the general reputation of the defendant in the neighborhood where the latter resided. It was ruled that the court properly refused to limit the reputation to the immediate

present. In this case the witness could not testify to the defendant's reputation at all in the neighborhood in which he resided for the last seven years. We think the evidence should have been excluded.

II. The defendant offered to show by Mrs. Adams that the prosecutrix was playing "April fool" with defendant on the first day of April, 1904, three days after the alleged rape on her by defendant, but on objection by the State this evidence was excluded. It is true the witness was permitted to answer some of the questions on this point, but obviously this evidence had a most material bearing, especially since the prosecutrix positively stated she left home and never had any communication with defendant after the morning of March 30th. When it is considered upon what a slight foundation this conviction rests, the defendant was entitled to every fact and circumstance tending to discredit the highly improbable story which the prosecutrix told. We can not closely gauge the weight which this testimony might have carried with the jury. If it may be said the evidence excluded was slight, it may be said with equal force that a conviction was never obtained upon less satisfactory evidence than this record contains, looking at it from this point of view.

III. We see no error in excluding the divorce petition. It was not binding on the State or prosecutrix either. Its averments were irrelevant to the issue on trial.

IV. Among other grounds urged for a new trial was that the prosecuting attorney in his argument stated to the jury that the defendant's wife "knew all about the alleged rape and knew many things about it, *but under the law* she could not testify for the reason that she was the defendant's wife." It is insisted by the Attorney-General that this ground is not supported by the record and of course does not prove itself. The record on this point is not as satisfactory as it perhaps

might have been made, but it does appear that counsel for defendant did object to the statement of the prosecuting attorney in regard to defendant's wife not being allowed to appear on the stand in his favor or against him, and that the court said, "I don't think, Mr. Collins, that you have a right to comment upon what her evidence would or would not be. She has not taken the stand and the law excludes her." Mr. Collins: "I just show that we cannot put her on the stand." Counsel for defendant: "That is just what we object to, the statement, 'that he can not put his wife on the stand.'" The court: "That is the law. That part of the statement is not objectionable, but the statement, if he undertakes to state what she knew, would be objectionable. I direct the attorney to keep within the record." An exception was duly saved.

This much clearly appears, that the prosecuting attorney not only referred to the failure of the wife to testify, but to his inability to compel her to testify, in the case as a reason why he could not fully develop the case to the jury. Unless we have drawn the correct conclusion from the objections of defendant's counsel, the ruling of the court, and the insistence of the prosecuting attorney, the colloquy between the attorney and the court is utterly meaningless.

Our statute provides that, *"at the option of the defendant,"* his wife may be a witness in his behalf. [Sec. 2637, R. S. 1899.] By section 2638, Revised Statutes 1899, it is provided: "If the accused shall not avail himself or herself of his or her right to testify, or *of the testimony of the wife or husband,* on the trial in the case, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor *be referred to by any attorney in the case,* nor be considered by the court or jury before whom the trial takes place."

It is plain that the counsel for the State alluded to the failure of defendant's wife to testify and excused

himself for not producing her evidence by informing the jury that under the law he could not get her evidence before the jury. In a word, the State's case was strengthened by giving the jury to understand that the wife would have supplied all that was necessary if only the State could have called her.

Was not this *a reference to the failure* of the defendant to call her as a witness, and was it not construed so as to affect the innocence or guilt of the defendant? In State v. Graves, 95 Mo. 1. c. 514, Judge NORTON, for this court, discussing this section and the complaint of the defendant in that case, that the prosecuting attorney was permitted by the court without rebuke, although objection was made, to comment on the fact "that defendant, when on the stand, could have told where he was on the night of the larceny, but failed to make any statement as to where he was," said: "The statute having conferred the right upon such a defendant when he takes the stand to testify only in regard to such matters as he may choose, this right of choice would in effect be taken away by a ruling which would justify comments to be made, and unfavorable inferences to be drawn from what he might have testified about, but about which he did not testify." That construction has since been followed in State v. Hudspeth, 150 Mo. 31, State v. Elmer, 115 Mo. 1. c. 404, and State v. Fairlamb, 121 Mo. 1. c. 150.

This court has often reversed judgments because counsel have volunteered to state facts which were not in evidence, on the ground that the jury are sworn to return their verdict upon the evidence, not on the unsworn testimony of counsel, or evidence received from other sources than the witnesses. Now in this case counsel for the State was permitted to refer to the failure of the wife to testify and to state he was not allowed to introduce her as a witness.

Outside of the statute, the wife was not a competent

witness against her husband, but the fact that the State could not so use her surely is no reason why counsel should comment upon the incompetency of the wife and thus lead the jury to infer that she would have testified to damaging facts and therefore they may presume she would have corroborated her daughter if the State could have used her as a witness.

We think the remarks of the prosecuting attorney in regard to the wife as a witness should been checked *in limine* and especially after timely objection made. [Johnson v. State, 63 Miss. 313; Com. v. Scott, 123 Mass. 237.]

We agree with the Attorney-General that "in reading the record of this case one can not help being impressed with the (extreme) improbability of the evidence of the prosecuting witness and with the danger of injustice in a case having its inception under the circumstances of the case at bar."

As the judgment must be reversed for the errors noted, it becomes unnecessary to say now whether we would permit the judgment to stand if there were no other assignment of error than the utter insufficiency of the evidence to support the verdict.

The judgment is reversed and cause remanded.

*Fox, J.,* concurs; *Burgess, P. J.,* absent.