**STATE of Missouri, Respondent,**

v.

**John FRANKOVIGLIA, a/k/a John Franks,
Appellant.**

**No. 57944.**

Supreme Court of Missouri,
Division No. 1.

Sept. 9, 1974.

Motion for Rehearing and Application to
Transfer to Court en Banc Denied
Oct. 14, 1974.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Henry H. Fox, Jr. and James R. Wyrsch, Kansas City, for appellant.

HIGGINS, Commissioner.

John Frankoviglia, a/k/a John Franks, was convicted by a jury of murder, first

degree. His punishment was assessed at life imprisonment, and sentence and judgment were rendered accordingly. (Appeal taken May 25, 1972; jurisdiction retained pursuant to order April 9, 1973.)

Appellant charges that the court erred (III) in refusing to direct a verdict of acquittal "because there was no credible evidence beyond a reasonable doubt to convict defendant."

In introduction to this contention, appellant concedes from the testimony of Ann Landie, wife of Sol Landie, deceased, Dr. David Zoller, pathologist, Detective George Henthorn, who recovered the death bullet from the pathologist, and Sergeant Robert Hardesty, who identified the murder weapon and the murder scene, that "in the early morning hours of Sunday, November 22, 1970, in a southern residential district of Kansas City [Jackson County], Missouri, a junkyard dealer by the name of Sol Landie was murdered in his bed as his wife lay beside him. Landie's wife was raped and his home ransacked."

Also, appellant recognizes that the State's evidence was designed to show that defendant had contracted for the murder of Sol Landie, who was a witness in a federal prosecution.

Edward Ronald ("Ronnie") Williams, age 25, lived at 6820 Paseo, Kansas City, Missouri, with his sister, father, and cousin, Marquise ("Stuff") Williams, whom he considered as a brother. He had pleaded guilty to a charge of murder in connection with the killing of Sol Landie and had been sentenced to life imprisonment.

Ronnie had a telephone conversation with Thomas Jefferson ("Tommy") Lee November 9, 1970, with respect to making some money, and they agreed to talk in person later in the week. On November 13, 1970, Ronnie, in Earl Howard's automobile with Earl, Howard Hill, and Edward ("Skippy") Medina, met Tommy in his automobile. Ronnie went to Tommy's car and Tommy told him he wanted Sol Landie "bumped off."

On November 17, 1970, Ronnie went to Tommy's house and he and Tommy drove in Tommy's Cadillac, a blue and white Coupe DeVille, to Landie's place of business in Kansas City, Kansas, where Tommy identified Sol Landie to Ronnie as the man to be killed because he was behind some gambling indictments or was a witness.

On November 21, 1970, Ronnie received a call from John ("Johnny Franks") Frankoviglia and was told to come by his place of business, Refinoil, 10th and Hardesty, Kansas City, Missouri. He drove there with Marquise Williams and Gary Johnson. He went in the station and Franks asked him why he had not yet killed Landie and gave him some marijuana to build up his nerve. From there the three picked up Linda Holoman and went to a party where a crap game was in progress and where they drank beer, cognac, and wine, and smoked marijuana until nearly 1:30 a.m., November 22, 1970. They left that party and went to Ronnie's home and continued the party. Ronnie received a call from defendant who told him that if the job was not performed he would be "bumped off" or a bomb put under his house. Ronnie then stole his father's gun, a 41-caliber hand gun, and he, Gary Johnson, Marquise Williams, and Earl Howard went to the Landie home at the address given them by defendant. They entered by the rear door, defacing it to appear as though entry had been forced. Once in the home, they ransacked it and took money and jewelry to make it appear as though a robbery had taken place. Marquise Williams was the "trigger man" who shot Mr. Landie.

On November 23, 1970, Ronnie went to defendant's place of business and was told by defendant that Tommy Lee had the money for him. Tommy gave Ronnie $2,000 out of which Ronnie gave $300 to Marquise Williams, $300 to Gary Johnson, and $1,000 to Earl Howard, principally for

disposing of some of the property taken from the Landie home.

Ronnie, as the State's chief witness, was corroborated variously by Richard Landie, Glenda Mae Williams, Linda Holoman, Marquise Williams, Edward Medina, Detective Clarence Luther, Detective Bert Cool, and Gary Johnson.

William Green, a fingerprint technician, found fingerprints of Gary Johnson at the scene.

Calvin Hamilton, former First Assistant United States Attorney in Kansas City, stated that Sol Landie had been a witness before a federal grand jury in August, 1970, and that an indictment was returned October 2, 1970, to which Mr. Landie, had he lived, would have been a key government witness.

The defense consisted of testimony from James McMullin, a law partner of defense counsel, calculated to render ineffective the testimony of Gary Johnson, Ronnie and Marquise Williams; testimony of Ralph Barreco, brother-in-law of defendant, to show that defendant did not go to his place of business on Saturdays and particularly on Saturday, November 21, 1970; and testimony of Nicholas and Antelina Frankoviglia, children of defendant, to show that he was home with them Saturday, November 21, 1970, and that after dinner, the family retired shortly after 10:00 p.m. Defendant and his wife did not testify.

■ The foregoing demonstrates a submissible case against defendant of murder, first degree. It is true, as argued by appellant, that the State's case rested primarily on the testimony of three convicted felons, Ronnie and Marquise Williams and Gary Johnson. Nevertheless, their records did not render them incompetent to testify, Section 491.050, RSMo 1969, V.A.M.S.; and discrepancies and contradictions, if any, in all the evidence, were for the jury to resolve under its duty to judge of the credibility of all witnesses and of the weight and value to be given to their testimony.

Appellant charges the court errred (II) in failing to grant a mistrial and in failing to grant a new trial "because in closing argument, the Prosecuting Attorney made direct reference to the failure of defendant's wife to take the stand, all in violation of Rule 26.08 * * * and of Section 546.-270 * * *." See also, e.g., State v. Watson, 1 S.W.2d 837 (Mo.1927); State v. Shouse, 188 Mo. 473, 87 S.W. 480 (1905); State v. Allen, 235 S.W.2d 294 (Mo.1950).

Rule 26.08, V.A.M.R., and Section 546.-270, RSMo 1969, V.A.M.S., provide that if the accused shall not avail himself of his right to testify on trial, or of the testimony of his wife, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury in trying the case.

This incident occurred in the State's closing argument: After introductory remarks, the assistant prosecuting attorney reviewed the evidence which he felt proved the State's theory of the case, i.e., that defendant, through Tommy Lee, procured Ronnie Williams to kill Sol Landie because he was a government witness on indictments of interest to defendant, and that some of the arrangements and questions occurred during face-to-face conversations and telephone calls on the Saturday and early Sunday morning preceding the murder. He proceeded:

"[MR. FREEMAN for plaintiff]: Now, I will refer just briefly for a moment to the defense in this case. You heard from two beautiful children in their late teens, testified that they spent every Saturday that fall home with their daddy, and, again, although one of them is a college student, stayed home all day every Saturday. Johnnie never left the house, never went by his business on Saturday, although it is just a mile away. And they are al-

ways in bed by ten or ten-thirty on Saturday night. It is strange that you did not hear from Mrs. Frankoviglia. MR. HILL [for defendant]: If it please the court, I have an objection. THE COURT: Step up.

"(Thereupon the following proceeding was had out of the hearing of the jury:)

"MR. HILL: Mr. Freeman has just referred to the failure of the spouse of the defendant to not [sic] testify. The protection which is given to the defendant also protects the spouse. This amounts to a comment by the Prosecutor on the failure of the defendant's wife to testify. At this time we move that the jury be instructed to disregard that comment, and we further move for a mistrial. * * * THE COURT: I am going to deny your request for a mistrial, but I am going to caution you, Mr. Freeman, not to approach on that subject again. I will instruct the jury to disregard that remark. MR. HILL: There is one thing further. Mr. Freeman and the jury knows she has been seated in the courtroom throughout the entire trial and for that reason could not be put on as a witness. THE COURT: I don't know that the jury knows who she is. * * *

"(The above concluded the proceeding had out of the hearing of the jury.)

"THE COURT: Gentlemen, you will disregard the last statement made by counsel, and you will not take that into consideration in your deliberation in any way, shape or form."

The assistant prosecuting attorney then proceeded to review the defense case and to conclude with a request for conviction.

■ Control of arguments of counsel and determination of the existence of prejudice as a result of an argument are matters within the discretion of the trial judge, and the judge's rulings will not be disturbed on review unless such discretion has been clearly abused.

■ With respect to this incident, the trial court, upon consideration of defendant's motion for new trial, found: "Even though the comment of the Assistant Prosecuting Attorney * * * in referring to the failure of Defendant's spouse to testify was improper, the Court does not feel that said impropriety was prejudicial under the circumstances. The Court immediately instructed the jury to disregard said remark and not to take it into consideration in their deliberations. The Court feels that if there was any error in said comment, said error was corrected by the admonition to the jury, immediately following the comment."

The quoted record shows also that the initial request of defense counsel was for an instruction to the jury to disregard the comment and "further" for the mistrial; and that the court's admonition to the jury was in response to counsel's initial request and in stronger language and broader scope than the request.

Appellant asserts that the court's instruction did not cure the error, and that the comment prejudiced defendant in the eyes of the jury and denied him a fair trial. He does not provide any demonstration in support.

In the particular situation presented, the court's instruction to disregard appears sufficient to have cured any error flowing from the comment in question. State v. Sechrest, 485 S.W.2d 96, 99[4] (Mo.1972); 9A Mo.Dig. 313, Criminal Law, Key No. 730(10).

■ Appellant charges the court erred (I) in overruling defendant's objection during the State's closing argument and in overruling his motion for new trial for the reason that a comment of the prosecuting attorney constituted a violation of defendant's privilege against self-incrimination, of Section 546.270, and of Rule 26.08, supra, "said statement being prejudicial to this defendant, thus denying him a fair trial because the jury's attention was improperly

called to the defendant's failure to testify." See also, e.g., State v. Ferrell, 233 Mo. 452, 136 S.W. 709 (1911); State v. Swisher, 186 Mo. 1, 84 S.W. 911 (1905); State v. Dupepe, 241 S.W.2d 4 (Mo.1951); State v. Robinson, 184 S.W.2d 1017 (Mo.1945); State v. Shuls, 329 Mo. 245, 44 S.W.2d 94 (1931); State v. Snyder, 182 Mo. 462, 82 S.W. 12 (1904); State v. Drummins, 274 Mo. 632, 204 S.W. 271 (1918); State v. Anderson, 240 S.W. 846 (Mo.App.1922); State v. Dodo, 253 S.W. 75 (Mo.App. 1923); State v. Volz, 269 Mo. 194, 190 S. W. 307 (1916); State v. Lindner, 282 S. W.2d 547 (Mo.1955); State v. Tibbetts, 299 A.2d 883 (Me.1973); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L. Ed.2d 106 (1965); Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961).

This incident occurred in this context: Defense counsel's argument had proceeded for eleven transcript pages when counsel was interrupted.

"MR. FREEMAN: Excuse me, just a moment, Mr. Hill. THE COURT: All right, step up, gentlemen.

"(Thereupon, the following discussion was had out of the hearing of the jury:)

"MR. FREEMAN: I don't know if this guy is sick or what, but this guy is really coming apart. I object to him doing this in the presence of the jury. MR. HILL: Who? MR. FREEMAN: Your client. MR. HILL: Can we take a brief recess?

THE COURT: All right, we will take a brief recess.

"(The above concluded the discussion had out of the hearing of the jury.)

"THE COURT: Gentlemen, we are going to take a brief recess at this time.

"(Thereupon, the Court having duly admonished the jury, a short recess was had.)

"THE COURT: You may proceed."

After the recess defense counsel continued for thirteen transcript pages and concluded.

The prosecuting attorney made the State's closing argument, much of which was devoted to answering defense counsel's criticism of the State's case and its attorneys. The particular incident occurrred midway in the argument:

"Mr. Hill talks about nitpicking. I don't think that he is nitpicking. I think that he is desperate. I think that he is unusually vicious to the attorneys. I cannot remember his being that vicious to me or Mr. Shockey or Mr. Freeman. I think that he is desperate. I think Mr. Frankoviglia is just beginning to realize what he is facing. I notice he didn't respond to testimony of the murder of Mr. Landie.

"(Thereupon the following proceeding was had out of the hearing of the jury:)

"MR. HILL: We object to the Prosecutor's statement as being a comment on the failure of the defendant to take the stand.

MR. TEASDALE: I am obviously referring to his breaking down and weeping during the final argument. THE COURT: I overrule the objection, but I caution you to stay clear of that subject matter. You are getting dangerously close to it.

"(The above concluded the proceedings had out of the hearing of the jury.)"

The prosecuting attorney proceeded with a brief review of the evidence and concluded with a request for conviction and the death penalty.

With respect to this incident, the trial court, upon consideration of the motion for new trial, found: "Such allegation is without merit. It is very clear to the Court that said reference was made only in response to the Defendant's audible and visible weeping spell during the Defendant's attorney's closing argument. Such a display was such that the Court was required

to call a recess to allow Defendant to regain his composure. Any reference made by Mr. Teasdale was made only with reference to this incident and not to Defendant's failure to testify."

Appellant argues that under his authorities, the comment in question was a proscribed comment on defendant's failure to testify in that it "singles out" the defendant as the absent witness.

 The key words of the rule and statute are "accused" and "testify," and the test is whether the jury's attention was called to the accused's failure to testify. State v. Hayzlett, 265 S.W.2d 321 (Mo. 1954); 68 A.L.R., l.c. 1108, 1121. The cases consistently require for reversal of a conviction that there be a direct, nonambiguous and unequivocal prosecutorial comment on the failure of the defendant to become a witness. See, e.g., State v. Tibbetts, State v. Dupepe, State v. Shuls, supra.

Defendant's difficulty is that the comment in question does not meet the foregoing tests as a subject for reversal of a conviction. At most, the comment is ambiguous in that if it may be construed as urged by appellant, it is also subject to the construction and context given it by the trial judge. The word "respond" in its context was as much a reminder to the jury that defendant had not audibly wept and sobbed during the State's case as he did during his counsel's argument, as it was a comment on defendant's failure to reply or testify in contradiction of the State's case. And, coupled with use of "notice" in the present context, it is most likely that a visual observation such as that found by the trial court had been made.

Accordingly, the court's ruling on the objection and the cautionary instruction given counsel were not an abuse of the trial court's discretion in control of the argument.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the Court.

All of the Judges concur.