394 F.Supp. 1293 (1975)
John FRANKOVIGLIA, Petitioner,
v.
George CAMP and Donald Wyrick et al., Respondents.
No. 75-256C (2).
United States District Court, E. D. Missouri, E. D.
April 24, 1975.
*1294 Henry H. Fox, Jr. and James R. Wyrsch, Kansas City, Mo., for petitioner.
John C. Danforth, Atty. Gen., by Robert Presson, Asst. Atty. Gen., Jefferson City, Mo., for respondents.

MEMORANDUM OPINION
REGAN, District Judge.
This petition for a writ of habeas corpus was transferred to this Court from the Western District of Missouri. The sole question presented is one of law, so that no evidentiary hearing is required.
Petitioner was convicted in the Circuit Court of St. Louis County of murder in the first degree and was sentenced to life imprisonment. The offense was allegedly committed in Jackson County, a change of venue having been taken to St. Louis County. The State's evidence was to the effect that petitioner had contracted with the actual killer for the murder of a Sol Landie, a key witness in a federal prosecution.
The petitioner did not take the stand in his own defense. He grounds his petition on the allegation that the prosecutor prejudicially commented on his failure to testify, thereby violating his Fifth Amendment privilege against self-incrimination. On his direct appeal, the Missouri Supreme Court ruled this contention adversely to petitioner (State v. Frankoviglia, Mo., 514 S.W.2d 536), so that his available state remedies have been exhausted.
We start from the premise that, as held in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, comment by a prosecutor in a state criminal trial upon a defendant's failure to testify violates the Self-incrimination Clause of the Fifth Amendment as made applicable to the states by the Fourteenth Amendment to the Constitution of the United States. We also bear in mind that even such a constitutional error does not mandate reversal of the conviction if the Court is satisfied that it was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.
*1295 The comment in question occurred about midway in the State's closing argument after defense counsel had presented his argument on behalf of petitioner. We quote the pertinent portion of the prosecutor's argument:
"Mr. Hill [counsel for petitioner] talks about nitpicking. I don't think that he is nitpicking, I think that he is desperate. I think that he is unusually vicious to the attorneys. I cannot remember his being that vicious to me or Mr. Shockey or Mr. Freeman [Assistant prosecuting attorneys]. I think that he is desperate. I think Mr. Frankoviglia is just beginning to realize what he is facing. I notice he didn't respond to testimony of the murder of Mr. Landie."
The prosecutor's remarks did not occur in a vacuum. To fully understand their purport, it is necessary to place them in proper context, so that we may apply "the appropriate standard" for determining whether the comments were improper:
"The facts and circumstances of each case must be carefully analyzed to determine `whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'", quoted in United States v. Biondo, 8 Cir., 483 F.2d 635, 644.
What then were the facts and circumstances? The State was seeking the death penalty. During his counsel's argument to the jury, petitioner broke down, thereby interrupting his counsel's argument, and (in the words of the trial judge) petitioner's "audible and visible weeping spell" was such that "the Court was required to call a recess to allow defendant to regain his composure" before his counsel could continue.
We believe it significant that the prosecutor's justification for the argument was not an afterthought but was made immediately upon objection having been made. The trial court, who was in the best position to know, stated, in ruling the motion for a new trial, "The prosecutor's comment was made only with reference to the weeping incident and not to defendant's failure to testify."
In our judgment, the language complained of was not "manifestly intended" by the prosecutor nor was it of such character that the jury would "naturally and necessarily" take it as a comment upon petitioner's failure to testify. What the prosecutor was doing was to contrast petitioner's lack of emotion (of which the jury would be aware) while the witnesses were testifying as to the gruesome details of the Landie murder itself, with his crying spell while his lawyer was arguing for petitioner's own life. In the sentence immediately preceding the one at issue, the prosecutor had stated, "I think Mr. Frankoviglia is just beginning to realize what he is facing," a comment which illuminates the words which follow, "I notice". Those words clearly referred to the prosecutor's visual observation of petitioner. And the word "response" was undoubtedly used in the context of defendant's composure (and failure to react) while the evidence relating to the details of the killing was being presented. The prosecutor made no reference at all to a failure to "respond" to the testimony of the contract for the murder, which was petitioner's only contact with the offense, since he had not been at the scene of the crime itself. Surely petitioner could not have it both ways, that is, reap the benefit of his emotional crying spell in the jury's presence upon realizing that his own life was in peril, without having the jury being reminded of his prior impassivity with respect to the taking of Landie's life. Cf. Hayes v. United States, 9 Cir., 368 F.2d 814, in which the prosecutor called attention to the attitude of the defendant during the testimony of a prosecution witness. It is also to be borne in mind that because of the objection made by petitioner's counsel, the prosecutor was not permitted to finish his train of thought and thus conclusively demonstrate that *1296 the purpose of his argument was in fact what he stated it to be.
Petitioner argues that in any event the prosecutor's comment is ambiguous in that it is susceptible of being interpreted as a reflection on his failure to testify. We do not believe that in the context, the one-sentence statement is in fact ambiguous. In its decision adverse to petitioner, the Supreme Court of Missouri held, not that the remark was in fact ambiguous but that "if" it might be construed as urged by petitioner, it is also subject to the contrary interpretation which was given to it by the trial court who had observed petitioner during the course of the trial. As we read the cases, the test to be applied is not whether there is a possible ambiguity, but whether the jury would "naturally and necessarily" construe the statement as a comment upon the defendant's failure to testify. In the circumstances of this case, we do not believe that a reasonably intelligent juror would "naturally and necessarily" interpret the sentence in question as a comment upon petitioner's failure to take the stand.
Even if it be assumed that the one-sentence remark of the prosecutor was ambiguous to the extent that it could conceivably be construed as petitioner contends, it was "harmless beyond a reasonable doubt" under the rule of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. On this issue the single sentence here complained of may be contrasted with the "extensive" and "machine-gun repetition" type of argument set forth in Chapman, as well as in Griffin, supra, and Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81.
In each of those cases, the prosecutor's comments were as explicit as the English language will permit. Thus, in Anderson, the prosecutor in an argument covering two printed pages of the Supreme Court Report hammered away at the theme that inferences favorable to the defendant should be overlooked because he did not get up on the stand and lie and tell the jury "a lot of hogwash." In Chapman, the prosecutor's 19 page argument covering every facet of the defendants' failure to testify "continuously and repeatedly impressed the jury * * * that by their silence [defendants] had served as irrefutable witnesses against themselves." And in Griffin, after expressly adverting to matters which "[the defendant had] not seen fit to take the stand and deny or explain," the prosecutor concluded by stating, "Essie Mae is dead, she can't tell you her side of the story. The defendant won't."
Having concluded from our review of the entire trial record that the challenged one-sentence observation of the prosecutor (which at most was ambiguous) was neither manifestly intended to be nor of such character that the jury would naturally and necessarily consider it to be a comment on petitioner's failure to testify, it follows that petitioner is not entitled to a writ of habeas corpus.