John **FRANKOVIGLIA**, Petitioner,

v.

Donald W. **WYRICK**, Respondent.

No. 80–910C(B).

United States District Court,
E. D. Missouri, E. D.

July 23, 1980.

Robert Duncan, Kansas City, Mo., for petitioner.

Michael Elbein, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

REGAN, District Judge.

Petitioner, presently serving a sentence of life imprisonment in the Missouri State Penitentiary following his March 25, 1972 conviction of murder in the first degree, again seeks habeas relief. A prior petition, transferred to this district from the Western District of Missouri, was denied in April, 1975. See *Frankoviglia v. Camp*, D.C., 394 F.Supp. 1293, affirmed on the basis of our opinion in 525 F.2d 690 (8 Cir. 1977). Certiorari was denied in 424 U.S. 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976). Subsequently, petitioner unsuccessfully sought post-conviction relief on other grounds under Missouri Supreme Court Rule 27.26, *Frankoviglia v. State*, Mo.App. 1979, 592 S.W.2d 217, and following his exhaustion of available state remedies, filed this second petition for a writ of habeas corpus in the Western District of Missouri. Again, the petition was transferred to this district.

Petitioner allegedly had "contracted" through an intermediary for the murder of Sol Landie, a key witness in a federal prosecution. In separate trials, the intermediary, Thomas Jefferson Lee, an employee of petitioner, was also convicted of the murder, as were three individuals who were allegedly paid for the killing. These three testified on behalf of the State at petitioner's trial.

As grounds of his present petition, petitioner alleges (1) that his retained counsel afforded him ineffective assistance, and (2) that the prosecutor and his assistants knowingly permitted the three paid killers to testify falsely. The State Court judge who heard the Rule 27.26 motion based on the same grounds (and who had theretofore presided at petitioner's original trial) found that petitioner had "received effective and capable assistance of trial counsel" and that "the prosecutor and assistants [had not] knowingly or intentionally used any perjured testimony."[1]

We have carefully read and reviewed the State court record (including the trial transcript, the Rule 27.26 transcript, and the various exhibits, including various statements, depositions, the detailed findings and opinion of the trial court and the state appellate briefs of the parties) as well as petitioner's traverse. We find that petitioner received a full, fair and adequate hearing in the State court proceeding at which the material facts were adequately developed. In our judgment, the determination of the State court adverse to petitioner is fairly supported by the record as a whole. Another evidentiary hearing in this Court would serve no useful purpose.

■ The specific complaints on the basis of which petitioner contends he was afforded ineffective assistance of trial counsel are that counsel failed to investigate the cause, interview witnesses, properly cross-examine the State's witnesses and prepare and present a meaningful defense. "The accepted standard for effectiveness of trial counsel is now established as that degree of performance which conforms to the care and skill of a reasonably competent lawyer rendering similar services under the existing circumstances." *Reynolds v. Mabry*, 8 Cir. 1978, 574 F.2d 978, 979.

1. He also found, in effect, that the alleged perjury had not been committed.

Counsel was experienced in the trial of criminal cases, having specialized in that area of law since 1946. During that period he had defended in excess of a hundred first degree murder cases. He had been first assistant prosecuting attorney for six years and for over four years been acting public defender of Jackson County. Although these facts, as well as counsel's admittedly excellent reputation, have no bearing on whether counsel's actual performance was adequate in the defense of petitioner, they do reflect that he was no novice.

The record refutes petitioner's contention that his counsel "failed to investigate the cause" and to prepare and present a meaningful defense. This contention is based in large part upon the fact that counsel did not personally interview the three state witnesses who incriminated petitioner, Ronald Williams, Marquise Williams and Gary Johnson. However, these witnesses had been interviewed and statements had been obtained from them by counsel's law partner. In addition, counsel's law partner had defended both Thomas Jefferson Lee and an Earl Howard, at whose trials these witnesses had testified. Transcripts of their testimony were available to counsel. These statements and transcripts had been studied at length and indexed by counsel, in addition to which he consulted with his partner with respect to the nature of the testimony and the inconsistencies therein. As counsel observed at the Rule 27.26 hearing, it is seldom an attorney has as much material with which to prepare a case and cross-examine the State's witnesses.

It is also to be noted that petitioner had retained another seasoned lawyer some time prior to the entry of trial counsel, and it is evident that the two experienced lawyers had discussed at length the defense of the case. True, they differed in their opinions as to whether petitioner and his wife should testify, but the decision not to take the stand, the advice given by trial counsel as a matter of trial strategy, was ultimately made by petitioner.

Petitioner further argues that counsel was derelict in failing to interview a potential defense witness. We find no merit to this claim, which relates to the testimony that Ronald Williams saw and talked to petitioner at his place of business on the Saturday immediately before the murder. It is petitioner's theory that the unnamed manager of a steak house in Kansas might have remembered that a year before his trial petitioner was in the steak house on the evening of the Saturday in question and dropped a steak. The first time counsel was aware of the alleged steak dropping incident was while the trial was in progress in St. Louis County. It is also significant that even if the manager (assuming he was available) could remember that petitioner had dropped a steak a year before,[2] the testimony at the trial of petitioner was that the Frankoviglia family did not leave their home for the steak house until about 7:30 p. m. which was about an hour or more after the time Ronald Williams allegedly met petitioner at his place of business. The steak dropping incident could not have happened before 8 p. m. at the earliest, so that the testimony of the manager could not have refuted the testimony of Ronald Williams.

Petitioner seeks to paint a picture of a lawyer of "advanced age" in poor health who could no longer effectively defend a criminal case. The record wholly fails to present such a picture. Far from being of "advanced age", counsel was only 62 years old at the time he defended petitioner. Although he was at times during the course of the trial somewhat fatigued, it is clear from a study of the transcript (as well as in the view of the trial judge) that counsel did a "more than adequate job" in his representation of petitioner. Whether or not in the light of hindsight, counsel's choice of trial tactics and strategy might have been different, we have no doubt that counsel's performance fully measured up to the competence demanded of trial counsel under similar circumstances.

**2.** Petitioner did not produce the manager or an affidavit at the Rule 27.26 hearing, so that we cannot know what if anything he could have testified to that would have helped petitioner.

**170**

The record fully supports the state court's findings that the prosecution's witnesses were not knowingly permitted to testify perjuriously. Petitioner's contention is that the state was a party to "deals" with the killers to the effect that they would not be given the death penalty provided they testified against petitioner. The alleged perjury is that such "deals" had in fact been made with the prosecution.

Two of the three witnesses had pleaded guilty and been sentenced to life imprisonment *prior* to the trial of petitioner. The great weight of the evidence was that no "deals" at all had been made. The only possible "deal" which might conceivably have been made was that they would be sent to a federal or out-of-state penitentiary to serve their life sentences. This was after they had received threats in jail that if (as they intended) they testified against petitioner, they would be murdered in the Missouri penitentiary. Even this possible "deal," if made, might have followed rather than preceded their testimony at the trial. More importantly, not only was it not quid pro quo for testifying for the state but the witnesses actually testified at the trial to the fact that such arrangements for their transfer had been made (and later carried out) because of the threats to their lives. Nothing was concealed from petitioner and his counsel.

It follows that petitioner is not entitled to habeas relief. An order dismissing the petition for a writ of habeas corpus will be entered.