**STATE of Missouri, Respondent,**

v.

**Charles Dennis JONES, Appellant.**

No. 56884.

Supreme Court of Missouri,
Division No. 2.

March 12, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

William J. Shaw, Alan G. Kimbrell, Clayton, for appellant.

STOCKARD, Commissioner.

Charles Dennis Jones was found guilty by a jury of first degree robbery. He was tried pursuant to the Second Offender Act, and the punishment, imprisonment for a term of twenty-five years, was assessed by the court. The notice of appeal was filed prior to January 1, 1972. Appellate jurisdiction is in this court.

There is no challenge to the sufficiency of the evidence. However, we shall set forth the evidence in some detail.

On January 20, 1970, appellant and two companions entered the Wayside Market. Appellant got in the line of customers at the checkout counter and when he got to the counter he picked up some small item and then placed his hand in his pocket as though holding a gun. He told Frank Leahy, the cashier, to open the register and he removed the contents. Money and proper-

ty were taken from customers, and then the employees and customers were told to go to a back room. One of appellant's companions ran out of the store carrying what appeared to be cartons of cigarettes. One of the customers was Teresa Flynn, age 13, whose mother was waiting outside in her automobile. The mother saw that a robbery was taking place and called the police. Colonel James Riley, Assistant Chief of Police at Richmond Heights, arrived within minutes and entered the market. He there arrested appellant and a person named Graves. Colonel Riley knew appellant and immediately recognized him. Other police officers arrived, and appellant and Graves were handcuffed. In the parking lot appellant escaped from the handcuffs and grabbed a revolver from one of the police officers. He was subdued and handcuffed again and placed in a police automobile. On the way to the police station, appellant again slipped out of his handcuffs and ran. Officer Wren fired six shots at him, saw him "lurch" down and fall, and then get up and run. He was not apprehended until about three weeks later. When arrested he was wearing a three-quarter length black leather coat which matched the one he was wearing at the time of the robbery, and which had two bullet holes in it. There was a bullet mark on appellant's leg. Appellant's explanation was that he had been shot by an unknown person while engaged in a crap game. There were some marks on appellant's wrists which had some hard scabs, and he had a scar on his left jaw, an identifying mark mentioned by witnesses who saw appellant at the time of the robbery. The inside of the right sleeve of appellant's coat contained what appeared to be blood stains. A neighbor heard some shots on the night of January 20, and the next morning he noticed some blood on the floor of his garage. An examination disclosed that this was human blood.

In four of the five points appellant presents in his brief he relies on "plain error" within the meaning of Rule 27.20, V. A.M.R. They are as follows:

1. The court erred in allowing the prosecuting attorney to argue his personal belief in defendant's guilt. The comments relied on are:

(a). "Exactly what these police officers did or didn't say at any time, at any given disposition, again is beside the point. They sat on the witness stand under oath and said that Jones did it. I'm sure Jones did it."

(b). "I have seen very few cases sewed up as tight as this one."

(c). "The evidence against Charles Jones is overwhelming. This is not the type case where you have to wonder, is this the right man. I know it and Mr. Anderson knows it; you know it."

2. The court erred in allowing the State repeatedly to buttress its identification testimony by prior consistent statements, opinions, conclusions, and leading and suggestive interrogation. The incidents relied on are:

(a). Q. At the time you viewed him in the lineup were you able to identify him at that time?

A. [Frank Leahy]. Yes, sir, I could.

(b). Q. Were you able to identify him at the lineup?

A. [Mr. Siegel, market owner]. I pointed him out, yes, sir.

(c). Q. And did you put out a teletype or APB?

A. [Col. Riley]. Put out a teletype, and the fact we knew he lived in Brentwood, we also called Brentwood to be on the lookout for him.

Q. Did you put out a teletype or an APB by name?

A. Yes, we did.

Q. You knew who you were looking for?

A. Charles Dennis Jones, yeah.

3. The court erred in allowing the prosecuting attorney repeatedly to refer indirectly and allude to appellant's failure to testify. The statements relied on are:

(a). "No question in Frank's [Leahy] mind but this was the man who robbed him. * * * So considering his interest in the case being virtually nothing, as Frank Leahy testified, that testimony stands uncontradicted."

(b). "Keeping in mind that State's evidence stands uncontradicted, that there was not one witness for State, not one witness in the trial who said anything except that defendant—."

(c). "Jones robbed the Wayside Market. There's no doubt him being the one who did it. There's no evidence to contradict anything that the State presented to you."

(d). "There's no evidence he didn't do it."

(e). "The State's evidence stands uncontradicted."

4. The court erred in failing to strike the argument of the prosecutor that certain marks on defendant at the time of his arrest, referred to as bullet wounds were "roughly three to five weeks old" because the remarks were without evidentiary basis.

There was no objection made to any of the above incidents at the trial, and there is no reference to any of them in the motion for new trial.

Some of these contentions can be disposed of on the basis that they did not constitute error. The others may be disposed of on the basis that the asserted error, if there was error, did not involve any violation of substantial rights and did not result in manifest injustice or a miscarriage of justice, and therefore, do not constitute plain error within the meaning of Rule 27.-20.

■ In the first point, subpart (b) did not constitute an expression of personal belief by the prosecutor of appellant's guilt. It was a permissible comment on the evidence.

■ Subparts (a) and (c) of the first point were or were not an expression of personal belief of appellant's guilt depending on the construction to be placed on the comments. As to subpart (a), the reporter placed the punctuation in the transcript, and we are not bound by it if improper. It could have been punctuated to read as follows: "They sat on the witness stand under oath and said that 'Jones did it; I'm sure Jones did it.'" In using the term "I'm," the prosecutor may not have been referring to himself, but instead may have been quoting what was said by the witnesses. In this event the comment was not objectionable. As to subpart (c), the prosecuting attorney, *in commenting on the evidence,* stated that the case was not one in which the jury had to "wonder" if appellant was the robber. He then added: "I know it and Mr. Anderson [defense counsel] knows it. You know it." When construed to mean that *because of the convincing evidence,* it was known by those mentioned that appellant was the robber, the comment is nothing more than a permissible comment on the evidence. In other words, paraphrasing the comment: "The evidence is convincing to me, and should be convincing to you."

The fact that appellant's experienced and capable counsel did not object lends credence to the construction that did not result in improper argument. In the circumstances of this case, the contention presented for the first time on appeal that the comments should be given a construction which results in them being improper does not demonstrate plain error affecting substantial rights which resulted in manifest injustice or a miscarriage of justice within the meaning of Rule 27.20.

■ The questions and answers relied on in appellant's second point show, at

most, that in the examination of some witnesses there were some leading questions asked and answered without objection. If these questions were deemed improper, corrective action by the court could have been taken upon objection. This court has consistently refused to consider as plain error under Rule 27.20 minor incidents involving the examination of witnesses. See for somewhat related incidents, State v. Barron, 465 S.W.2d 523 (Mo.1971); State v. Hamblin, 448 S.W.2d 603 (Mo.1970); and State v. Johnson, 472 S.W.2d 393 (Mo.1971). In addition, in view of the other evidence of identification, under the circumstances most positive and convincing, no prejudice could possibly have resulted from the examination of which complaint is now made.

■ In point 3, none of the statements referred to in appellant's brief are of the type which improperly refers to appellant's failure to testify. The prosecutor did not state that appellant did not testify. It calls for a strained construction to find an indirect reference to his failure to testify. What the prosecutor told the jury was that the State's evidence was without contradiction. That comment is permissible under the circumstances. As stated in State v. Morgan, 444 S.W.2d 490, 493 (Mo.1969), "the prohibition of § 546.270 RSMo 19[6]9 and Criminal Rule 26.08 is against comment that *the accused* did not testify; not that the defendant did not offer any evidence." See, also, State v. Robb, 439 S. W.2d 510 (Mo.1961); State v. Kilgore, 447 S.W.2d 544 (Mo.1969); State v. Hutchinson, 458 S.W.2d 553 (banc 1970). There was no error, much less plain error.

■ The fourth point presents nothing but a comment, made in oral argument, contended to have been without evidentiary support. The description of the marks on appellant's wrist authorized a comment that they were "roughly three or four weeks old." But, even if the remark was

not supported in the evidence, without objection it was not of the nature to be considered under the plain error rule. There was no error affecting substantial rights.

■ Appellant's fifth and remaining point is that the court erred in overruling his objection to testimony by Frank Leahy "that he had previously seen defendant and Graves, 'approximately one week one day and three hours before the robbery.'" Appellant argues that the effect was to tell the jury that appellant had been involved in a prior robbery.

Frank Leahy testified that appellant came into the store, looked around, and then got in back of a long line of customers at the checkout counter. When he reached the counter he picked up a small item and then committed the robbery as previously set forth. He also testified that three persons were involved in the robbery, and that he had not previously seen one of the persons. He said the other two were appellant and a "one-eyed man," and when he was asked "how long prior to this evening had you seen the one-eyed man," he replied, "approximately one week one day and three hours." An objection, which was overruled, was made on the basis the answer was "so specific as to indicate to this jury that there was something wrong prior to this time, in light of the fact also that it was previously mentioned that Jones and a man by the name of Graves was in the store prior." The prosecutor then asked: "Now Frank, you said you had seen the subject who robbed you on a previous occasion, too. Was that at the same time you had seen this one-eyed person?" The answer was, "yes, sir."

The answer to which the objection was made was given in reply to a question pertaining to the "one-eyed man;" not appellant. Then when the prosecutor asked if the witness saw appellant at the same time, no objection was made. However, in any

event, we do not consider the answer to have been objectionable. The witness did not say that either appellant or the one-eyed man had previously been engaged in a crime, and while the answer was unusual in its preciseness, it did not imply prior criminal activity any more than it implied that the one-eyed man and appellant had been seen while engaged in some proper activity. Assuming, however, for argument that some inference of a prior robbery was permissible, the answer was not improper. Ordinarily, proof that a defendant participated in a crime other than charged is not permissible. State v. Allen, 442 S.W.2d 18 (Mo.1969). However, there are exceptions, and one recognized exception is when the proof of the other crime "has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial," and evidence of other crimes is competent to prove the specific crime charged "when it tends to establish * * * the identity of the person charged with the commission of the crime on trial." State v. Wing, 455 S.W.2d 457 (Mo.1970), cert. den. 400 U.S. 1009, 91 S.Ct. 566, 27 L.Ed.2d 621. In this case the identity of appellant as the robber was in issue. The fact that a short time previously Frank Leahy had seen appellant and his companion, the one-eyed man, under circumstances which would cause him to remember them and recognize them at the time of the robbery was important to the reliability of the identification by the witness. Accepting appellant's strained construction of the answer, which we do not consider warranted, there was no error in overruling the objection.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.