STATE of Missouri,
Plaintiff-Respondent,

v.

Glen Eugene CROW and Roy Maggard,
Defendants-Appellants.

No. 11394.

Missouri Court of Appeals,
Southern District,
Division Four.

May 7, 1980.

Motion for Rehearing or to Transfer
Denied May 28, 1980.

Application to Transfer Denied
July 15, 1980.

David Robards, Public Defender, Joplin, for defendants-appellants.

John Ashcroft, Atty. Gen., Kathleen Mills, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

The defendants were separately charged under the Second Offender Act with the second degree burglary of a supermarket. By agreement, they were jointly tried. Each was found guilty by the jury and sentenced by the court to ten years' imprisonment. They filed a joint notice of appeal to the Supreme Court asserting that court had jurisdiction because of constitutional implications of the Second Offender Act (former § 556.280 RSMo) and its repeal. The Supreme Court transferred the appeals to this court "in which jurisdiction is vested". Nevertheless, the defendants urge this court to return the appeals to the Supreme Court. This court declines to do so.

The defendants contend the evidence is insufficient to support their convictions. This requires a review of the evidence. In such review "[t]he facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded". *State v. Franco*, 544 S.W.2d 533, 534 (Mo. banc 1976), cert. den. 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). So reviewed, the following is a brief summary of the facts.

The store was closed by the assistant manager at the close of business on Wednesday, November 22, 1978. It was closed Thursday, which was Thanksgiving. At approximately 3:00 a. m. on Friday, as the result of a phone call, several units of the Joplin Police Department were dispatched to the scene. The first officers to arrive checked all of the doors, found them locked, and kept the premises under surveillance. There had been no entry through the roof. While the officers were waiting for a key, two men were seen running inside the store from a stock room on the north side toward the rear wall. While the officers could not from this observation identify the defendants, as no one entered or left the building except the defendants when they were captured, it is apparent these two men were the defendants. After the assistant manager arrived with a key,

the officers began a search from the front to the rear. As they approached the rear they saw a hole in the concrete or cinder block wall. The hole was behind shelves along the rear wall on which wine was displayed and opened into the motor room at the rear of the building. The motor room housed the motors for the air conditioning and refrigeration equipment. It was a small room constructed by using the rear wall of the display area as one wall of the motor room. The wall was solid between the two areas. The only normal access to the motor room was through a door which opened to the outside. From the outside the lock on this door opened by a key but from the inside by flipping. There were pry marks on the outside of that door although no one could pinpoint when the damage occurred. The four shelves in front of the hole were about 18 inches wide and about 18 inches apart. The shelves were normally backed with a particle or fiberboard. The bottles of wine in front of the hole had been removed or pushed to the side. The backing in front of the hole had been torn from the shelves and had slipped down between the shelves and the wall.

Upon reaching the rear wall, one officer knelt by the hole and shouted the ambiguous command "freeze and come out". The officer stationed outside heard a clicking, the motor room door opened, the defendants emerged and were promptly arrest. They were wearing gloves. There was a light amount of block debris on the floor in front of the shelves. There was a heavy amount of debris in the motor room along with several bottles of wine, a sledgehammer, a hammer, brace and bit, screwdriver and a punch. There were no fingerprints.

■ The defendants' attack upon the sufficiency of the evidence is based upon the proposition the state's case is based upon circumstantial evidence and the facts and circumstances must exclude every reasonable hypothesis of their innocence. They correctly assert that breaking out is not burglary, *State v. Ewing*, 298 S.W.2d 439 (Mo.1957), and argue that the evidence is as

consistent with the hole having been made to break out as to break in. They point to the fact no bottles of wine were broken, some were pushed aside in front of the hole, and there was block debris on the floor in front of the wine shelves. They emphasize the shelves were backed with "steel or some other sturdy material."

■ This court cannot agree that the state's case was based upon circumstantial evidence. Two men, obviously the defendants, wearing gloves, were seen in the store, which had a hole knocked in the back wall. *State v. Stead*, 473 S.W.2d 714 (Mo.1971). Those circumstances alone support the verdicts. *State v. Hawkins*, 491 S.W.2d 342 (Mo.1973); *State v. Brewer*, 549 S.W.2d 642 (Mo.App.1977). However, giving the defendants the benefit of this assertion, as the trial court did in giving MAI–CR 3.42, the case will be considered on that basis. The record does not support their statement the shelves were backed with steel or some sturdy material. The testimony was it was some type of particle board. The pictures introduced by defendants establish it was not of sturdy quality and that portions had been broken from the shelves and slipped down between the shelves and the wall. The jury could have reasonably found a hole was made from the motor room big enough to break the backing and allow the broken portion to slip down, remove some bottles of wine from the shelves and push others aside, and then complete the hole. This would account for the bottles of wine in the motor room as well as the heavy debris in the motor room and light debris on the floor in front of the shelves. The circumstances demonstrating the gossamer qualities, if not impossibility, of defendants' hypothesis are many. Prominent is the absence of any other point of entry. If it is defendants' theory they entered during business hours and concealed themselves until after closing, it seems most remote they could have entered unnoticed carrying a sledgehammer, hammer, brace and bit, screwdriver and a punch. Had the hole been made from the inside, why were the bottles of wine placed on the floor of the

motor room rather than the display area. The defendants' hypothesis is virtually destroyed by the well-nigh impossibility the defendants could wield their implements through the wide shelves in such a manner as to knock a hole in a solid concrete block wall without damaging those shelves or breaking the bottles of wine pushed aside. The facts and circumstances need not exclude every hypothesis of innocence, only a reasonable hypothesis. *State v. Franco*, supra. The defendants' hypothesis is not of that quality. The evidence was sufficient to support the convictions. *State v. Schneider*, 585 S.W.2d 114 (Mo.App.1979); *State v. Anderson*, 555 S.W.2d 362 (Mo.App. 1977).

■■ Another point of the defendants is that a new trial should have been granted because the informations were uncertain as to whether the offense charged concerned the motor room or supermarket building so that the convictions fail to bar a further prosecution. To support this point they argue there were two buildings, the store building and motor room, and in so doing with remarkable forensic agility state "the evidence showed that there were actually forceable *break ins* with regard to separate buildings". (emphasis added) They then argue that breaking into the motor room was not with the requisite intent to constitute that breaking and entering a burglary, citing *State v. Watson*, 383 S.W.2d 753 (Mo. 1964). That case is not controlling for it involved two separate but adjoining buildings occupied by separate businesses owned by different proprietors. In this case the motor room was an integral part of one building. The two areas were one building by function and occupancy. It was not necessary that there be direct access by a door between the two areas. Compare *State v. Parker*, 501 S.W.2d 3 (Mo.1973); *State v. Hutchinson*, 111 Mo. 257, 20 S.W. 34 (1892). The breaking of the inner wall was sufficient to constitute burglary. *State v. Burke*, 462 S.W.2d 701 (Mo.1971). The defendants' assertion that because of *the uncertainty of the information* they were handicapped in preparing their defense is belied by their statement "the theo-

ry of defense posited at trial" was that the hole in the wall was to break out rather than break in. Their argument under this point, which point does not mention instructions, that the verdict directing instructions did not sufficiently direct the jury's attention to that breaking has not been preserved for review. That issue does not follow the point relied on, *State v. Flynn*, 541 S.W.2d 344 (Mo.App.1976), and the instructions referred to are not set forth as required by Rule 84.04(e). *State v. Hoelting*, 562 S.W.2d 703 (Mo.App.1978). The informations referring to a store at a given address, the property of a designated company, were sufficient. *State v. Rist*, 456 S.W.2d 13 (Mo.1970); *State v. Ball*, 432 S.W.2d 265 (Mo.1968).

■■ The defendants' next two points concern the effect of the adoption of the new criminal code, effective January 1, 1979, and the resulting repeal of the applicable prior laws. The offense in question took place November 24, 1978. The trial was held on January 29, 1979. The defendants assert that under the prior law the maximum punishment for second degree burglary was 10 years' imprisonment, but that under the new code the maximum punishment for such an offense is 7 years' imprisonment. They then cite § 1.160 which in part provides: "that if the penalty or punishment for any offense is reduced or lessened by any alteration of the law creating the offense, the penalty or punishment shall be assessed according to the amendatory law." They then contend they should not be sentenced to more than 7 years' imprisonment. This contention ignores the saving provision of the new criminal code § 556.031(3) which has been held to show "the clear intent of the General Assembly that the provisions of law relating to 'proceedings' and 'substance' in effect prior to the code would remain effective and applicable". *State ex rel. Peach v. Bloom*, 576 S.W.2d 744, 747 (Mo. banc 1979). The defendants were properly sentenced to 10 years' imprisonment. The next point is that the Second Offender Act is procedural and that the decision in *State ex rel. Peach*

*v. Bloom*, supra, is not controlling because the Supreme Court did not consider § 1.180. That opinion did not expressly mention § 1.180, but it was undoubtedly considered by that court and determined, as this court determines, not to be applicable to bar the "proceedings" under the Second Offender Act in this criminal case. The defendants were properly tried and sentenced under the Second Offender Act. *State ex rel. Peach v. Bloom*, supra.

■ The next two points of the defendants are that the trial court erred in not instructing on the allegedly lesser included offenses of trespass, § 560.447, and malicious destruction of property, § 560.395. The test for determining what is a lesser included offense was discussed and clarified in a recent case. The statutory element test was approved. That test is expressed in § 556.046(1) and has been stated: does the statute defining the greater offense include all of the statutory elements of the lesser. *State v. Smith*, 592 S.W.2d 165 (Mo. banc 1979). Section 560.070 (second degree burglary) did not include the element of notice of unwelcomeness required by § 560.-447 (trespass) and the latter was not a lesser included offense. *State v. Smith*, supra. Second degree burglary may be committed by raising an unlocked window. *State v. Bradley*, 485 S.W.2d 408 (Mo.1972); *State v. Rhodes*, 408 S.W.2d 68 (Mo.1966). Section 560.070 did not include the element of destruction or intent to destroy required by § 560.395 and the latter was not a lesser included offense. *State v. Hernandez*, 462 S.W.2d 790 (Mo.1971); *State v. Hadley*, 364 S.W.2d 514 (Mo.1963); *State v. Davis*, 574 S.W.2d 940 (Mo.App.1978).

■ The defendants' next point is that the trial court erred in failing to give MAI–CR 2.72. However, this point has not been preserved. At the trial the defendants offered an instruction which read: "You are to separately determine whether each defendant is guilty or not guilty by examining the evidence separately as to each defendant. All the evidence in the case is to be considered by you as to each defendant." In their motion for new trial the defendants

asserted error in the refusal of that instruction. No mention was made of MAI–CR 2.72. Former Rule 27.20(a) required that a motion for new trial must set forth "the specific grounds or causes therefor." Or, restated "[t]he appellant cannot broaden the scope of his objection on appeal from the precise objection made at the trial." *State v. Blockton*, 526 S.W.2d 915, 920 (Mo. App.1975). Under these circumstances the trial court's failure to give MAI–CR 2.72 must be reviewed under the plain error rule [former Rule 27.20(c)], which has been invoked by the defendants.

■ It is conceded by the state that MAI–CR 2.72 should have been given. However, the failure to give MAI–CR 2.72 setting forth the requirement of separate consideration for each defendant or MAI–CR 2.70 setting forth the requirement of separate consideration of each count of a multi-count charge is not necessarily reversible error. It is a question of whether or not in the absence of such an instruction the jury understood it was to consider each defendant or each count separately. The instructions are to be read together. *State v. Arrington*, 559 S.W.2d 749 (Mo. banc 1978); *State v. Laptad*, 585 S.W.2d 263 (Mo. App.1979). There was a separate verdict directing instruction for each named defendant. There was a separate converse instruction for each named defendant. The burden of proof instruction read:

The fact that the defendants have been charged with an offense is not evidence, and it creates no inference that any offense was committed or that either defendant is guilty.

*Each defendant* is presumed to be innocent unless and until, during your deliberations upon your verdict, you find him guilty. This presumption of innocence places upon the state the burden of proving beyond a reasonable doubt as to *each defendant* that he is guilty.

If the evidence in this case leaves in your mind a reasonable doubt as to *a defendant's* guilt you must return a verdict of "Not Guilty" as to *that defendant.* (emphasis added)

Reading the instructions together it is clear the jury knew that it could find both defendants guilty or innocent or one defendant guilty and the other innocent. *State v. Arrington*, supra. Lack of prejudice is demonstrated by the fact there was not one bit of evidence applicable to one defendant that was not applicable to the other. The failure to give MAI–CR 2.72 was not prejudicial and not reversible error and certainly was not error which resulted in manifest injustice. *State v. Arrington*, supra; *State v. Sanders*, 541 S.W.2d 530 (Mo. banc 1976); *State v. McEntire*, 574 S.W.2d 459 (Mo.App. 1978); *State v. Boyington*, 544 S.W.2d 300 (Mo.App.1976).

The final joint point of the defendants is an attack upon the constitutionality of the Second Offender Act. The attack was first waged by the disjointed, conclusionary pro se motion of one defendant, later joined in by the other. This court has been admonished concerning consideration of such a point: "The point merits no further consideration. The statute and the procedure are valid for all purposes and against all such constitutional attacks. Such a point should be denied peremptorily in future cases." *State v. Maxwell*, 411 S.W.2d 237, 239 (Mo. 1967). The point is denied.

Defendant Crow contends that the application of the Second Offender Act in this case upon the basis of a 1970 conviction and sentence was improper because the 1970 conviction was based upon a 1962 conviction under the Second Offender Act which was infirm because the 1962 conviction was improperly founded upon prior infirm convictions of attempting escape and stealing chickens at night. For the disposition of this point it is sufficient to observe that the judicial history involved is set forth in *Crow v. State*, 492 S.W.2d 40 (Mo.App.1973)[1] and the 1962 conviction was upheld. The point is denied.

The judgment as to both defendants is affirmed.

FLANIGAN, C. J., and BILLINGS, GREENE and PREWITT, JJ., concur.

---

1. Also see *Crow v. State*, 514 S.W.2d 13 (Mo.App.1974).