STATE of Missouri, Respondent,

v.

Ricky ZAGORSKI, Appellant.

No. 62841.

Supreme Court of Missouri,
En Banc.

May 11, 1982.

Clifford A. Cohen, Public Defender, Gary L. Gardner, Asst. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

RENDLEN, Judge.

Defendant appeals from a jury conviction of burglary second degree and stealing for which the trial court imposed concurrent sentences of 10 and 5 years respectively under the Second Offender Act, § 556.280, RSMo 1969.[1] This appeal comes to us from the Western District of the Court of Appeals which ordered the cause transferred after opinion. We determine the same as though on original appeal. Art. V, § 10, Mo.Const.

Substantial evidence supports the verdict. Norma Gleason and her son Kevin left their home in Jackson County at 7:30 in the morning on September 22, 1978, and returning about 10:30 Kevin heard some rustling in his parent's bedroom. Looking in he saw a man facing the dresser who turned momentarily to face Kevin, then dove through both a storm window and screen to the sidewalk about 12 to 15 feet below and gathering himself, ran from the yard, across a highway and disappeared into the woods. Examination of the home disclosed that a basement garage door window adjacent to the handle had been shattered and the door handle broken. The drawers of an office desk and file box had been opened, the bedrooms ransacked and Norma Gleason's diamond and ruby rings were missing. Sometime later when the investigation focused, a search was begun for defendant and a patrolman found him hiding in a closet of his girl friend's residence. When interviewed by the police, defendant gave his oral and written confession both of which were presented to the jury at trial, wherein he admitted that he randomly chose a house to burglarize and breaking through the garage door, went into a den but found nothing he wanted, thence to a bedroom where he discovered a woman's gold ring with diamonds and other jewelry. Someone came into the room so he dove from the window, lost the ring in his escape and went to the hospital for treatment of his wrist.

Pursuant to defendant's motion to suppress, the trial court considered various constitutional challenges to the admission of the statements and after an extensive evidentiary hearing overruled the motion.

I.

Defendant first contends the trial court erred by the admission of defendant's hospital records showing a cast had been placed on his right wrist the day of the burglary in that the foundation for admission of this evidence failed to satisfy the requirements of the Uniform Business Records as Evidence Act. As previously discussed, on September 22, 1978, a burglar jumped head first from the Gleason home through a storm window and screen to the ground 12 to 15 feet below, and the hospital records revealed that later on that date defendant was treated for a broken wrist, permitting an inference connecting the facts.

The Uniform Business Records as Evidence Act, § 490.680, 1978, (hereinafter the Act) provides as follows:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

---

1. The crimes occurred September 22, 1978, and defendant was sentenced as a second offender under § 556.280, RSMo 1969, in vogue at the time of the occurrences and applicable here though the trial was not held until June 14, 1979. *State ex rel. Peach v. Bloom*, 576 S.W.2d 744 (Mo. banc 1979); *State v. Crow*, 600 S.W.2d 162 (Mo.App.1980), *cert. denied* 449 U.S. 882, 101 S.Ct. 234, 66 L.Ed.2d 107. The relevant statute is now § 558.016, RSMo Supp. 1980.

Defendant maintains the custodian did not testify (1) that the records were prepared at or near the time of the act, nor (2) that the records were prepared in the regular course of business. The transcript belies these contentions as the following testimony provided the foundation for the records' admission in evidence

Q. Ma'am, would you please state your name for the jury?

A. Dee Greenwell.

Q. And what is your ocupation [sic], Ms. Greenwell?

A. Custodian of medical records, Independence Sanitarium Hospital.

Q. And what are your duties?

A. To see that the records are filed and processed in an orderly way.

Q. Let me hand you what's been marked as State's Exhibit 10, and can you identify that?

A. Yes, I can.

Q. And what is that?

A. It's the emergency room record on Ricky Zagorski.

Q. Would you spell that, please?

A. Z-a-g-o-r-s-k-i.

Q. And how are these records prepared?

A. After the patient leaves the emergency room, they are delivered to the medical records department and processed, to make sure the record is signed, and they are kept in our filing system for five years and then the record is destroyed and is put on microfilm. These are the original records.

Q. Who makes up these records?

A. The doctor in the emergency room and the emergency room personnel that works there.

Q. And this would be the doctor that tends to the patient?

A. Yes.

Q. What is the Exhibit that's been marked 10a?

A. That is a copy of the emergency room record.

Q. Now, referring back to 10 again, does that reflect—does that document reflect a date?

A. Yes, it does.

Q. That this treatment was received?

A. It was 9–22–78.

Q. And does it reflect a time?

A. Yes, at 18:43 p. m. [sic].

Q. And does it reflect what treatment Mr. Zagorski received?

A. Yes, it does.

Q. And what treatment does it reflect?

A. He was given an x-ray and a cast.

Q. Does it show what was casted?

A. Yes, it does.

Q. And what was that?

A. The right radius.

Q. In layman's terms, would that be the wrist?

A. Yes, it would.

 Trial courts are accorded wide latitude in determining whether sufficient foundation has been established to justify the admission of records under the Act. *State v. Boyington*, 544 S.W.2d 300, 305 (Mo.App.1976). As to the time of preparation, it may reasonably be inferred from Ms. Greenwell's testimony that the records were prepared soon after or while defendant was actually in the emergency room (8:43 p. m. on September 22, 1978). She testified the attending doctor *in* the emergency room prepares the records, which are delivered to the medical records department *after* the patient leaves the emergency room. From this testimony, the trial court was justified in determining that records were prepared "at or near the time" of treatment as those terms are employed in § 490.680. *Fisher v. Gunn*, 270 S.W.2d 869, 878 (Mo.1954).

 The Act also requires the records be prepared in the regular course of business. Ms. Greenwell explained the records are prepared by the attending doctor and the emergency room personnel, then delivered to the medical records department for processing and checking for signature. Further, her duties, as custodian of records,

include ensuring the "records are filed and processed in an orderly way." Her testimony describing the mode of preparation satisfied the requirement of the Act. We find no error from the introduction of these records in evidence.[2]

## II.

The next issue involves a comment of the prosecutor made during argument and objected to by defendant as an impermissible reference to his right to remain silent. Concerning the trial court's management of oral argument, we held in *State v. Treadway*, 558 S.W.2d 646, 650 (Mo. banc 1977), *cert. denied* 439 U.S. 838, 99 S.Ct. 124, 58 L.Ed.2d 135 (1978):

Questions of the propriety of oral argument are addressed to the discretion of the trial court, and an appellate court will not interfere absent abuse of that discretion and prejudice to the appellant.

In *State v. Frankoviglia*, 514 S.W.2d 536, 641 (Mo.1974), this Court, referring to an issue remarkably akin to that at bar stated:

The cases consistently require for reversal of a conviction that there be a direct, nonambiguous and unequivocal prosecutorial comment on the failure of the defendant to become a witness.

The prosecutorial comment in *Frankoviglia*, similar to the instant case, was described as follows:

At most, the comment is ambiguous in that if it may be construed as urged by appellant, is also subject to the construction and context given it by the trial judge. *Id.* at 541.

It should be noted at the outset of this discussion that the trial court, prior to the State's argument, gave the following MAI–CR approved instruction:

Under the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be raised from the fact that the defendant did not testify.

*See* MAI–CR 3.76.

 Here the questioned comment occurred during the State's argument to the jury, after a considerable effort of the defense to contradict, and otherwise discredit the confession's probative value. This began during the extensive cross-examination of the State's witnesses and continued during the presentation of defendant's case. Though the attempt to discredit the confession was essentially unsuccessful the prosecutor, in an effort to defend it from the effect of defendant's attack, understandably pointed out in argument that: "It is uncontradicted. I submit to you the confession corroborates all the testimony of the State's witnesses previous to this."[3] While defendant chooses to describe this comment in a manner favorable to his point of view, i.e., that it referred to the fact that "the defendant did not testify in this trial," the trial court did not so view it, and in the *context of the trial*, overruled the objection. We should keep in mind that the prosecutor's comment was in response to defendant's prior attack. The court was aware that following presentation of evidence of

2. Additionally, the record establishes no prejudice occurred to defendant from admission of the hospital records for other evidence disclosed that defendant sustained a broken wrist for which he was treated on September 22. It is well settled that if evidence is improperly admitted, but other evidence before the court establishes essentially the same facts, there is no prejudice to defendant and no reversible error. *Harris v. Goggins*, 374 S.W.2d 6, 15 (Mo. banc 1963); *State v. Rezabek*, 584 S.W.2d 430, 435 (Mo.App.1979). Accordingly, if the trial court erred, and we find it did not, the error was nonprejudicial.

3. The State's argument to the jury is as follows:

MR. SHEPHERD: ... Ricky orally confessed to his participation, his commission of the burglary and of the stealing of the ring. Secondly, this was reduced to writing while Officer Bosch was present, giving it to him. This is the writing. You have it here before you, and you can ask for it in the jury room. Ricky Zagorski read it and signed it. *It is uncontradicted.* I submit to you the confession corroborates all the testimony of the State's witnesses previous to this. (Emphasis added).

Defendant's objection to this argument and motion for mistrial were overruled.

the confession, defendant's unflagging attack was launched on its probative value and the credibility of the witnesses who supplied the foundation for its admission. For example, the credibility of Officer Bosch, who took the statement, was attacked by defendant's attempt to show that the statement was not a complete and true statement of what occurred because the officer failed to write down everything he was told; that Bosch was biased in favor of the State because he was a paid employee of the State and wanted a *fair trial for the State*, implying that he did not want a *fair trial for defendant*; that defendant, having only an eighth grade education, could not have been responsible for the confession, for it contained flowing language not possibly his;[4] that the statement bore many patent mistakes and therefore did not correctly reflect defendant's tale; that the statement contained ambiguities and internal inconsistencies, hence should not be favorably considered by the jury; that the officer made promises of leniency, including "deals" with defendant via his two witnesses, Doreen Abel and Joy Lazenby; and, that defendant, having consumed both alcohol and drugs prior to his arrest, was intoxicated, impairing the confessions' reliability. These and similar attacks, scattered through cross-examination of the State's witnesses (though denied in each particular) and also in defendant's case in chief, shaped the matrix against which the trial court, exercising its discretion, determined that the questioned comment was not a reference to defendant's failure to testify. The point in question has been previously decided by this Court on similar facts in *State v. Jones*, 491 S.W.2d 271 (Mo.1973), in which the appellant claimed the Court erred by allowing the prosecuting attorney to make several statements alluding to the appellant's failure to testify among which was, "The State's evidence *stands uncontradicted.*" (Emphasis added). *Id.* at 273. After a discussion of the surrounding circumstances, the Court decided "There was no

error, much less plain error" in the rulings of the trial court. *Id.* at 274. Similarly, in *State v. Robb*, 439 S.W.2d 510, 514 (Mo. 1969), this Court, deciding essentially the same point, considered an objection to the final jury argument by the prosecuting attorney in which he had analyzed the evidence as to various phases of the case and on a number of occasions stated that the State's evidence to which he made reference was "*uncontradicted.*" There the objection to the argument as constituting a comment on defendant's failure to take the stand was properly overruled and the comment was permissible under the circumstances of the case. In the case at bar, the State's evidence as to the defendant's confession was arguably uncontradicted notwithstanding defendant's repeated efforts at impeachment.

The judgment is affirmed.

DONNELLY, C. J., and MORGAN and HIGGINS, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

WELLIVER and BARDGETT, JJ., dissent and concur in dissenting opinion of SEILER, J.

SEILER, Judge, dissenting.

I respectfully dissent. Because of the reference to defendant's failure to testify, this case was reversed and remanded by the court of appeals, western district, on the authority of *State v. Rothaus*, 530 S.W.2d 235 (Mo. banc 1975), *State v. Cockrum*, 592 S.W.2d 300 (Mo.App.1979), and *State v. Reed*, 583 S.W.2d 531 (Mo.App.1979), none of which are discussed in the principal opinion. The court of appeals then transferred the case here on its own motion, pointing out there is uncertainty and confusion in the cases on the matter of indirect references by the prosecutor to the defendant's failure to testify. Notably the principal opinion says nothing about this problem.

---

4. In the hiatus concerning this matter, an objection was sustained, but the essential facts on this particular were before the jury.

The court of appeals stated that over ninety reported cases can readily be cited which involve, in one form or another, arguments of the nature made in the present case and that an inordinate amount of judicial time is consumed in attempting to resolve these issues. The principal opinion ignores the fact that, whether the prosecutor's comment is characterized as direct or indirect, the only person in a position to contradict the officer's testimony as to the confession was the defendant himself, who chose to exercise his constitutional right not to testify. That being so, the jury could not have escaped realizing that when the prosecutor argued that the state's case was "uncontradicted" that meant uncontradicted by defendant personally.

The principal opinion justifies the argument made by the prosecutor on the ground that defendant tried to discredit or impeach the officer's testimony by cross examination. Cross examination is the testing of the witness by questioning—here the police officer. It does not necessarily constitute *contradiction* of anything. The principal opinion fails to consider whether, when the prosecutor argued the confession was "uncontradicted,"—which means to deny or assert to the contrary—there was anyone other than defendant whom the jury might think could have contradicted the confession. The principal opinion thus does nothing to clear up the confusion which exists in the law on this point.

A simple, fair, easily applied test would be: if there is someone other than defendant who can testify in contradiction, then the prosecutor's argument about a confession or whatever the evidence may be being "uncontradicted" is not a comment on defendant's failure to testify. If there is not, then it is. This test would require reversing and remanding the case before us.

By what we are doing, we are again encouraging the use of devious and slick argument by prosecutors, this time on the ground it was only a response to an attack by cross examination. Such an excuse will always be present in a contested criminal trial. We ought to have the courage to put an end to such business.