**STATE of Missouri, Respondent,**

v.

**Brett L. ALBARADO, Appellant.**

**No. 22177.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 19, 1999.

Sandra Anne Grant, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Defendant, Brett L. Albarado, tried as a prior offender, § 558.016.2, RSMo 1994, was found guilty by a jury of stealing telephone services by deceit in violation of § 570.030, RSMo 1994.[1] The trial court sentenced Defendant to four years' imprisonment.

Defendant appeals, complaining about jury instructions, admission of evidence, and the alleged insufficiency of the proof to support the conviction.

Defendant was tried on a second amended information averring, *inter alia,* that he:

" ... appropriated ... telephone services, of a value of at least one hundred

---

**1.** The crime was alleged to have occurred between November 22, 1995, and January 4, 1996. During that time, the version of § 570.030 in RSMo 1994 was in force. It read, in pertinent part:

"1. A person commits the crime of stealing if he appropriates ... services of anoth-

er with the purpose to deprive him thereof ... by means of deceit....

....

3. Stealing is a class C felony if:

(1) The value of the ... services appropriated is one hundred fifty dollars or more...."

and fifty dollars, which services were in the charge of Betty Fick, and defendant appropriated such services from Betty Fick and with the purpose to deprive her thereof by deceit in that the defendant represented to Betty Fick that he was using a calling card to place phone calls from her telephone to his answering machine in another state, which in fact he was having the calls billed to Betty Fick, which representation was false and known by defendant to be false and Betty Fick relied on the representation and was thereby induced to part with such services...."

■ Defendant's third point, which this court addresses first, reads:

"The trial court erred in not sustaining Appellant's motion for judgment of acquittal at the close of the State's case and Appellant's motion for judgment of acquittal at the close of all evidence in that the facts presented failed to state[2] any crime for which submission to the jury was possibility, such failure denied Defendant his rights to due process and a fair trial as guaranteed by the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Article 1, Sections 10 and 18(a) of the Missouri Constitution."

■ Defendant's complaint that the trial court erred in "not sustaining" Defendant's motion for judgment of acquittal at the close of the State's case was not preserved for review at trial in that after the State rested, Defendant testified in his own defense. By presenting evidence after the State rested, Defendant waived any claim of error regarding the denial of his motion at the close of the State's case. *State v. Purlee*, 839 S.W.2d 584, 587[1] (Mo. banc 1992). Consequently, for purpose of this court's review, the issue is whether Defendant's motion for judgment of acquittal at

the close of all the evidence should have been granted. *Id.*

In deciding that issue, this court considers the evidence in the light most favorable to the verdict. *State v. O'Brien*, 857 S.W.2d 212, 215–16 (Mo. banc 1993). Evidence supporting a finding of guilt is taken as true, and all logical inferences that support such a finding and that may reasonably be drawn from the evidence are indulged. *Id.* at [5]. Conversely, evidence and inferences therefrom that do not support a finding of guilt are ignored. *Id.*

So viewed, the evidence established that in 1994, Betty Fick got acquainted with Defendant when he became a frequent customer of a restaurant she was operating.

In October 1995, Fick[3] allowed Defendant to move into one of the bedrooms in a two-bedroom apartment where she resided. Fick explained: "[H]e didn't have a place to stay, and his car was in the shop and couldn't afford to have it fixed.... He was just a good friend, and I wanted to help him out when he needed help."

Fick supplied Defendant one of the two keys to the apartment. She kept the other. No one else had access.

Fick had a telephone in the apartment. She gave Defendant permission "to use it for local calls," but not long distance calls. Fick recounted: "He had had a credit card. He ... said he would use the phone with his credit card. Any long-distance calls he would make he had a GTE credit card.... I saw a card in his hand at one time.... He was using it, reading off of it, dialing a phone number." Fick's testimony continued:

"Q    In December [1995] did you have a discussion with him about the card?

A    Yes, sir.

Q    What was the nature of that?

---

2. Perhaps Defendant meant "prove" or "establish."

3. For brevity, this opinion henceforth refers to Ms. Fick by her surname. No disrespect is intended.

A He told me he had received a call from a friend of his who works for the credit card company, that they were not going to honor his credit card, and that those calls would be put on my bill[.]"

Asked whether Defendant made any suggestion about what to do, Fick replied: "He said that I should tell the phone company that my 15–year–old step-grandson had come in and made those calls, and I would not be charged with them, they would take them off my bill, and I told him I couldn't do that."

According to Fick, Defendant picked up the mail from her outside mailbox most of the time because he was planning to start a business and "was getting information mailed to him at that address."

During November and December 1995, Fick received no bill for telephone service for those months.[4] She was not overly concerned because there were "children in the apartments" and she had "seen mail on the ground that belongs to people, that the mailboxes had been gotten into."

Defendant resided in Fick's apartment until January 1, 1996, when Fick moved to another address. She asked him to "find another place to live."

Fick avowed her telephone bills prior to November 1995 were "typically between $50.00 and $70.00" per month.

Asked whether she received a bill in January 1996, Fick answered, "Yes, sir." She added, "It was for $9,000.00, and it was—"

At that juncture, Defendant's lawyer interrupted Fick's answer by objecting that it was hearsay, whereupon the following dialogue ensued:

"[Prosecutor]: I don't think it's hearsay, Judge, if she knows how much her bill was.

THE COURT: Do you have the bill?

[Prosecutor]: Yes.

THE COURT: All right, overruled.

A It was for over $9,000.00.

Q (By [Prosecutor]) Did you receive . . . a December bill?

A I had called the phone company when I received the $9,000.00 bill. Needless to say, I was on the phone all day, and they sent copies of all of the phone calls for November and December to me, and then I received it, and the total amount was over $16,-000.00.

Q Would that be for November and December—

A —For November and December."

The prosecutor then showed Fick State's Exhibit 1; she identified it as her telephone bill dated December 1, 1995, itemizing "November's calls." Then, this:

"Q What was unusual about this bill that was not normal from your normal bills?

A Because it was over, I would say, it was $9,450.00 more than what I ordinarily would have.

Q Now . . . would that be for one month or both months we're talking about?

A One month.

Q So, for November and December together do you know how much it was?

A For November and December it was $16,015.93."

After further testimony by Fick, the prosecutor offered Exhibit 1 in evidence. Defendant's lawyer objected that "it's hearsay and no foundation."

The trial court received Exhibit 1 in evidence. That ruling is the subject of Defendant's second point, discussed *infra.*

Negotiations between Fick and "the representative from AT & T" ultimately resulted in removal of most of the charges. According to Fick, "We're now down to somewhere between $500.00 to $600.00."

4. Fick did receive a bill in November "for October's service."

She added, "They suspended my service last month[5] because I . . . couldn't pay it all."

After his lodging arrangement with Fick ended, Defendant moved into a "spare bedroom" in a house occupied by Deborah Hatosey Butler. While there, he made long distance calls totalling approximately $110. After learning about the calls, Butler asked the telephone company to "block" any long distance calls from her phone.

Butler testified Defendant admitted making long distance calls on Fick's phone. Butler's testimony:

"[H]e said 'I could have made some of those', you know, he said 'I made some calls, but I didn't make any so many thousands of dollars' worth that she's saying that I made', and I said 'Well, about how many do you think you made', and he said 'Oh, maybe a couple of hundred dollars' worth or so', and that was it."

Carol Shannon testified Defendant was at her home in March and April 1996. She told him he could use her phone "as long as he didn't make no long-distance phone calls." She later learned he had made long distance calls totalling $345 during that period.

This court's adjudication of Defendant's third point (quoted earlier) begins with Rule 30.06(d),[6] which sets forth the requirements for a point relied on in an appellant's brief in a criminal case. Rule 30.06(d) reads, in pertinent part:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous . . . ."

Defendant's third point presents the unadorned assertion that the "facts" failed to "state" any crime for submission to the jury. The point yields no clue as to wherein or why the "facts" were insufficient for that purpose.

In *State v. Conaway,* 912 S.W.2d 92, 95 (Mo.App. S.D.1995), one of the accused's points relied on averred the trial court erred in denying the accused's "motion for directed verdict" in that there "was no evidence from which a rational trier of fact could find the essential elements of the crimes charged beyond a reasonable doubt." This court held the point deficient under Rule 30.06(d) because, among other flaws, it failed to state wherein and why the evidence was insufficient to support a verdict of guilty of the crimes charged. *Id.* at [8]. Additionally, this court pointed out it has no duty to search the argument portions of a brief in an attempt to discern the thrust of an appellant's contentions. *Id.* at 96[11].

Defendant's third point is afflicted with the same malady as the point in *Conaway.* Nonetheless, this court has seined the argument following the point in quest of Defendant's theory of error.

Defendant's hypothesis, as this court divines it, is that his conviction amounts to imprisonment for debt, which is barred by Mo. Const., Art. I, § 11 (1945)—a constitutional provision unmentioned in Defendant's third point. Citing *State v. Porter,* 630 S.W.2d 598 (Mo.App. W.D.1982), an appeal from a conviction under a statute repealed January 1, 1979, *id.* at 599, Defendant proclaims stealing cannot be proven simply by showing an accused promised to pay a debt and did not make good on the promise at a later date.

Defendant's argument reveals he misunderstands the crime of which he was convicted.

Defendant was not convicted of defaulting on a promise to pay Fick—or the telephone company (evidently AT & T)—for the long distance calls he made.

5. Inferably, May 1997.

6. References to rules are to Missouri Rules of Criminal Procedure (1999).

Defendant's crime was inducing Fick, by deceit, to allow him to obtain long distance telephone service using her phone—a use she allowed only because he falsely represented he was charging the calls to a credit card in his name.[7] Defendant did not get Fick's permission to use her phone for long distance calls by promising to pay her for them later. He obtained her permission by leading her to believe the calls were being charged to him, not her. Because of Defendant's deception, Fick was initially subjected to a claim by AT & T exceeding $16,000.

AT & T's ultimate decision to cease pursuing Fick for most of that sum does not mean Defendant committed no crime when he inveigled Fick into allowing him to obtain long distance service using her phone. AT & T's benevolence toward Fick merely means that between AT & T and Fick, AT & T will absorb most of the loss.

In sum, this is not a prosecution of Defendant for failing to pay a telephone bill. It is a prosecution for stealing by deceit, i.e., fraudulently obtaining the use of Fick's telephone for long distance service totalling approximately $16,000, a use that initially exposed Fick to a claim in that amount and later resulted in suspension of her telephone service.

For the above reasons, this court holds Defendant's third point, as understood by this court, is without merit.

7. The jurors could have reasonably inferred Defendant had no valid credit card when he made the calls. When a long distance call is to be charged to a credit card, the caller must supply the card number to the long distance provider at the start of the call. If the card is invalid, the call does not proceed. Consequently, Defendant's explanation to Fick that the charges for his calls would appear on her bill because the "credit card company" was not going to "honor" his card is patently implausible.

8. Defendant did not file Exhibits 1 through 4 in this court, hence this court's understanding of what those exhibits show is, of necessity, limited to what this court can gather from the

Defendant's second point maintains the trial court erred "in admitting the phone bills of Betty Fick into evidence," as they were hearsay. Defendant insists the error was prejudicial because the bills were "the sole evidence on the element of value of the services."

The State concedes the bills "lacked the proper foundation and were thus hearsay." However, argues the State, the bills "were merely cumulative evidence of [Defendant's] guilt."

From the argument following Defendant's second point, this court learns the bills to which the point refers are State's Exhibits 1 through 4.[8]

As reported earlier in this opinion, Fick identified Exhibit 1 as a telephone bill dated December 1, 1995. Later in her testimony, Fick identified: Exhibit 2 as a telephone bill dated April 4, 1997, for $43; Exhibit 3 as a telephone bill dated May 4, 1997, for $68.70; Exhibit 4 as a telephone bill dated November 4, 1996, for $53. Exhibits 2, 3 and 4—like Exhibit 1—were received in evidence over Defendant's hearsay objection.

An inspection of Fick's testimony, quoted earlier in this opinion, reveals Defendant's lawyer[9] registered only one hearsay objection while Fick was testifying about the amount charged her for the November 1995 and December 1995 telephone service. That objection came when Fick started to testify about the January 1996

transcript. An assignment of error regarding admission of an exhibit in evidence need not be considered on appeal if the exhibit is not filed with the appellate court. State v. Shire, 850 S.W.2d 923, 932[15] (Mo.App. S.D.1993); State v. Simms, 810 S.W.2d 577, 582[9] (Mo. App. E.D.1991). However, this court believes it can extract enough information from the transcript to determine whether Defendant was prejudiced by Exhibits 1 through 4, so this court shall address Defendant's second point on the merits.

9. The lawyer who represented Defendant at trial is not the lawyer representing him in this appeal.

bill. After the trial court overruled that objection, Fick testified without further objection that the combined charge for the November 1995 and December 1995 calls exceeded $16,000. Additionally, Fick recounted without objection that her telephone bill dated December 1, 1995, itemizing "November's calls," was $9,450 more than she was ordinarily charged. Continuing without objection, Fick avowed the combined billing for November 1995 and December 1995 was $16,015.93.

Fick gave additional testimony before the prosecutor offered Exhibit 1 in evidence. As we have seen, that offer triggered a hearsay objection from Defendant's lawyer; however, by then Fick had already given the testimony referred to in the final three sentences of the preceding paragraph, all of which was received without objection.

■ Assuming, without deciding, that such testimony would have been vulnerable to a hearsay objection, this court points out that hearsay evidence, if not objected to, is admissible and may be considered along with other evidence. *Conlon v. Roeder*, 418 S.W.2d 152, 158–59[5] (Mo.1967);[10] *Thorpe v. Meier*, 755 S.W.2d 683, 691[4] (Mo.App. S.D.1988). The probative worth and value of such evidence is for the trier of the facts. *Id.* at 691; *Bourne v. Manley*, 435 S.W.2d 420, 427–28[8] (Mo.App. 1968).

Consequently, even had the trial court sustained Defendant's hearsay objection to Exhibit 1 and excluded it from evidence, there was ample testimony by Fick—received without objection—from which the jury could find the value of the telephone service Defendant obtained exceeded $150.[11]

■ If evidence is improperly received, but other evidence establishes essentially the same facts, there is no prejudice to the accused and no reversible error. *State v. Zagorski*, 632 S.W.2d 475, 477–78[5] n. 2 (Mo. banc 1982). Accordingly, this court holds Defendant was not prejudiced because the trial court received Exhibit 1 in evidence, hence that error does not entitle Defendant to reversal.

The same rationale applies to Exhibits 2, 3 and 4. As this court fathoms the prosecutor's strategy, those exhibits were presented to show Fick's average monthly phone bill was between $40 and $70 except when Defendant resided in her apartment.

A review of Fick's testimony, synopsized earlier, reveals she testified her telephone bills prior to November 1995 were typically between $50 and $70. Defendant voiced no hearsay objection to that testimony, which established essentially the same thing as Exhibits 2 through 4. Consequently, the trial court's receipt of those exhibits over Defendant's hearsay objection does not compel reversal. *Zagorski*, 632 S.W.2d at 477–78[5] n. 2.

Finding no basis for reversal in Defendant's second point, this court turns to his first. It presents two complaints about jury instructions. Those complaints can be coherently discussed, if at all, only after an account of certain facts not previously mentioned.

During Defendant's testimony, he admitted he pled guilty to burglary and theft in Wisconsin in the 1980's.

In addition to that testimony, there was evidence of other criminal activity by Defendant, as explained in the next paragraph.

The second amended information on which Defendant was tried contained two

---

10. A holding in *Conlon* on an unrelated issue was overruled in *Tune v. Synergy Gas Corp.*, 883 S.W.2d 10, 21–22 (Mo. banc 1994).

11. Under § 570.030, RSMo 1994 (footnote 1, *supra* ), stealing is a class C felony if the value of the services appropriated is $150 or more.

Defendant was charged with a class C felony, hence the State had to present sufficient evidence to support a finding that the value of the long distance service obtained by Defendant was at least $150.

counts. Count I was the one on which he was convicted—stealing telephone services by deceit. Count II charged him with receiving stolen property. The prosecutor presented evidence on Count II which pertained to events unrelated to Count I.

The trial court held two conferences with counsel about instructions. The first occurred after the trial court recessed the jury at the end of the first day of trial. During that conference, the trial court indicated it would give instructions numbered 3 through 8, 8A, 9 and 10.[12] Instruction 5 was the verdict-directing instruction on Count I; Instruction 7 was the verdict-directing instruction on Count II.

The second conference occurred at the conclusion of all the evidence. At that conference, the prosecutor tendered an instruction based on MAI–CR 3d 310.12. The trial court numbered it 6A. It read:

"If you find and believe from the evidence that the defendant was involved in an offense other than the one for which he is now on trial and other than the offense mentioned in Instruction No. 5,[[13]] you may consider that evidence on the issue of motive or intent or presence of a common scheme or plan of the defendant and you may also consider such evidence for the purpose of deciding the believability of the defendant and the weight to be given to his testimony. You may not consider such evidence for any other purpose."

Defendant's lawyer objected to Instruction 6A because it "is not appropriate in this situation, and . . . an instruction based on 310.10 is the . . . one that is relevant to this case[.]"

12. The trial court had already read Instruction 1 (MAI–CR 3d 302.01) and Instruction 2 (MAI–CR 3d 302.02) to the jury. The trial court gave those instructions following MAI–CR 3d 300.06, which the court read immediately after the jury was sworn.

13. As reported earlier, Instruction 5 was the verdict-directing instruction on Count I.

The trial court opined that because of the evidence that Defendant "made unauthorized . . . long-distance telephone calls, from the telephones of two other witnesses" (inferably Butler and Shannon), the court was obligated to give Instruction 6A.

After that ruling, Defendant's lawyer tendered an instruction based on MAI–CR 3d 310.10. The trial court numbered it 8B. It read:

"If you find and believe from the evidence that defendant plead guilty to the offenses of burglary and theft, you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. You must not consider such previous plea of guilty as any evidence that the defendant is guilty of any offense for which he is now on trial."

The trial court announced Instruction 8B "will be the last instruction read before Instruction 9."

The jury acquitted Defendant of Count II—an inference an attentive reader will already have drawn.

■ One of the two complaints in Defendant's first point is that the trial court failed "to submit MAI–CR 3rd. 310.10 to the jury when it had been offered an [sic] accepted, and was required to be given in conjunction with instruction MAI–CR 3rd. 312.10." [14]

As we have seen, the instruction based on MAI–CR 3d 310.10 was Instruction 8B, tendered by Defendant's lawyer and accepted by the trial court.[15]

14. This court deduces from the argument following Defendant's first point that the reference to "MAI–CR 3rd. 312.10" is a mistake, and that Defendant meant to refer to MAI–CR 3d 310.12 (on which the prosecutor based Instruction 6A). Instructions in the 312 series of MAI–CR 3d are designed for situations that may arise after jury deliberations begin.

15. The argument in Defendant's brief proclaims the instruction based on MAI–CR 3d

Defendant's notion that the trial court failed to give Instruction 8B is apparently based on the absence of Instruction 8B from the legal file submitted by Defendant.

However, the State submitted a supplemental legal file containing Instruction 8B. The supplemental legal file is the source from which this court set forth Instruction 8B earlier in this opinion. Instruction 8B bears the date "6–10–97"—the date the instructions were given to the jury—followed by the handwritten initials of the trial court.

Defendant also appears to base his belief that the trial court failed to give Instruction 8B on the following passage in the transcript:

"The Court read Instructions 3 through 10 to the jury. . . ."

Defendant's brief maintains the above passage "only indicates that the Judge read instructions 3 through 10 to the jury." Defendant evidently assumes that because Instruction 8B is not specifically mentioned in the above passage, the trial court did not give it.

This court rejects that assumption. As explained earlier in this opinion, the trial court stated during the first instruction conference that it would give instructions numbered 3 through 8, 8A, 9 and 10. During the second instruction conference, the trial court announced it would also give instructions numbered 6A and 8B. All of those instructions are in the record on appeal (the legal file and supplemental legal file), and all are identically dated and initialed by the trial court.

This court is unwilling to conclude Instruction 8B was not given merely because its number (which falls between 3 and 10) is not specifically set forth in the above-quoted passage from the transcript. Instructions 4, 5, 6, 6A, 7, 8, 8A and 9 are not specifically mentioned in the passage, yet it could scarcely be argued that the passage indicates they were not given. Indeed, Defendant's other complaint about instructions (discussed *infra*) is that the trial court erred in giving Instruction 6A—a complaint obviously premised on the hypothesis that Instruction 6A was given even though its number is not specifically set forth in the above-quoted passage.

Furthermore, Defendant's lawyer was present when the trial court read Instructions 3 through 10 to the jury. The transcript contains no remonstrance by Defendant's lawyer that the trial court failed to read Instruction 8B. Inasmuch as Defendant's lawyer, only moments earlier, had successfully tendered Instruction 8B to the trial court, it is inconceivable that Defendant's lawyer would have remained silent had the trial court failed to give the instruction.[16]

For the above reasons, this court rejects Defendant's theory that the trial court failed to give Instruction 8B to the jury.

■ The other complaint in Defendant's first point is that the trial court erred in "failing to sustain Defendant's objections to the submission of an incorrect instruction MAI–CR 3rd. 310.12 in conformance with the Notes on Use for said instruction."

As explained earlier in this opinion, the instruction based on MAI–CR 3d 310.12 was Instruction 6A, tendered by the prosecutor.

The claim of error in Defendant's first point about Instruction 6A fails to comply with Rule 30.06(d) in that the point does not set forth wherein and why Instruction 6A did not conform to the Notes on Use for MAI–CR 3d 310.12. That deficiency is similar to the deficiency in the point relied on in *Conaway*, 912 S.W.2d at 95[8], and

310.10 "was supposed to be Instruction 8a." That is wrong. Instruction 8A was tendered by the prosecutor. It was based on MAI–CR 3d 304.12, and was given by the trial court.

**16.** As noted in footnote 9, *supra*, the lawyer who represented Defendant at trial is not the lawyer representing him in this appeal.

also similar to the deficiencies in two points relied on in *State v. Reichert,* 854 S.W.2d 584, 591[7] and 600–01[36] (Mo. App. S.D.1993). Consequently, Defendant's first point presents nothing for review as to Instruction 6A.

Furthermore, the only claim of error regarding Instruction 6A in Defendant's motion for new trial was:

"The trial court erred in submitting Instruction No. 6A. It was not supported by the evidence."

Rule 28.03, the current version of which was in force when Defendant was tried, reads:

"Counsel shall make specific objections to instructions ... considered erroneous. No party may assign as error the giving [of] ... instructions ... unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.... The objections must also be raised in the motion for new trial in accordance with Rule 29.11."

Rule 29.11(d), the current version of which was in force when Defendant was tried, reads:

"In jury-tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial.... Where definite objections ... were made during the trial, *including specific objections to instructions, a general statement in the motion of any allegations of error based thereon is sufficient.* ... " (Emphasis added.)

As narrated earlier in this opinion, the issue about Instruction 6A arose during the second instruction conference. There, Defendant's lawyer registered an objection that may have been sufficient to raise Defendant's present complaint that Instruction 6A did not conform to the Notes on Use for MAI–CR 3d 310.12.

However, the only allegation of error about Instruction 6A in Defendant's motion for new trial was that the instruction "was not supported by the evidence." Obviously, that is not a complaint that Instruction 6A failed to conform to the Notes on Use for MAI–CR 3d 310.12. Thus, the allegation of error regarding Instruction 6A in Defendant's motion for new trial did not fulfill the preservation requirement of Rule 29.11(d), as the allegation was not a general statement of the objection to Instruction 6A made during the trial.

Because (1) the assignment of error about Instruction 6A in Defendant's first point is insufficient to present anything for appellate review, and (2) the complaint in Defendant's motion for new trial about Instruction 6A made no reference to his objection at trial that Instruction 6A did not conform to the Notes on Use for MAI–CR 3d 310.12, this court holds the attack on Instruction 6A in Defendant's first point is ineligible for review.

■■■■ Relief for plain error under Rule 30.20 is unwarranted. To receive such relief, an accused must demonstrate that the action of the trial court was not only erroneous, but that the error so substantially impacted upon his rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected. *State v. Hall,* 955 S.W.2d 198, 204[14] (Mo. banc 1997), *cert. denied,* 523 U.S. 1053, 118 S.Ct. 1375, 140 L.Ed.2d 523 (1998).

Assuming, without deciding, that Instruction 6A failed to conform to the Notes on Use for MAI–CR 3d 310.12, this court fails to see how Instruction 6A resulted in manifest injustice or a miscarriage of justice.

First, Instruction 8B correctly limited the jury's consideration of Defendant's burglary and theft conviction to the issue of his credibility. Second, the jury acquitted Defendant of Count II, hence it appears the jury based its verdicts on the evidence, undistracted by Instruction 6A. Accordingly, Defendant is entitled to no relief under Rule 30.20.

Defendant's fourth point—the only one not yet considered—insists the trial court erred in submitting Count I to the jury in that "the facts presented failed specifically to establish the element of the Defendant's intent." That contention is essentially a reprise of Defendant's third point.

The evidence discussed in regard to the third point amply supported a finding that Defendant realized Fick would not allow him to use her phone for long distance calls if she had to pay for them. Consequently, Defendant deceived Fick into believing he was charging his long distance calls to a credit card in his name, when in fact he was not. By that deception, Defendant induced Fick into allowing him to obtain long distance services using her phone.

Defendant's fourth point is denied, and the judgment is affirmed.

PARRISH and SHRUM, JJ., concur.